IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BOOM LANKA BATHIK & GIFTS, LLC, and SURDARMA WARNAKULASOORIYA, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| SCANWELL LOGISTICS (MIA), INC.; SCANWELL LOGISTICS COLOMBO (PVT) LTD; and ALPHA BROKERS CORPORATION. | ) ) ) ) ) |
| Defendants. | ) ) |

C.A. No.: 1:24-cv-23151

**DEFENDANT SCANWELL LOGISTICS (MIA), INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3) AND 12(b)(6)**

COMES NOW, Defendant Scanwell Logistics (MIA), Inc. ("Defendant" or "Scanwell MIA"), by undersigned counsel and hereby submits its Reply in Support of Motion to Dismiss. For the reasons stated in Defendant's Memorandum in Support of Motion to Dismiss as well as the reasons stated herein, Defendant respectfully requests the Court grant its Motion and dismiss Plaintiffs' Complaint.

In Plaintiffs' Response to Defendant's Motion to Dismiss, Plaintiffs claim that COGSA cannot apply to Scanwell MIA because Scanwell MIA is not a carrier or a ship. Plaintiffs are correct that COGSA—on its face—only applies to carriers and ships. However, as courts have universally held, the analysis of the application of COGSA does not end with the determination of whether a party is a carrier or ship. In fact, the very cases Plaintiffs cite clearly show—albeit in language Plaintiffs chose not to cite in their brief—that COGSA may be extended to agents of

carriers such as Scanwell MIA.  This is exactly what occurred here. The International Bill of Lading—the contract applicable to this shipment—between Plaintiffs and Scanwell Container Line Ltd. extends COGSA to Scanwell MIA via a Himalaya Clause:

> The Merchant undertakes that no claim shall be made against any employee, agent or sub-contractor of the Carrier if such claim imposes upon them any liability in connection with any Services provided by the Carrier. If any such claim should nevertheless be made, the Merchant shall indemnify the Carrier against all consequences. Every such employee, agent and sub-contractor shall have the benefit of all the terms herein benefiting the Carrier as if such terms were expressly provided for his or its benefit. For these purposes, the Carrier contracts for itself and also as agent and trustee for each such employee, agent and sub-contractor.

*See* MTD, ECF No. 5, Ex. A.  "Services" under the International Bill of Lading "means any services of the Carrier provided for the Merchant e.g. carriage of goods by sea, inland waterway, land, road, rail and/or air; and/or storage, labelling, loading, unloading, packing, unpacking, consolidation, de-consolidation, collection, delivery and/or other handling of goods."  *See* MTD, ECF No. 5, Ex. A.  The courts have universally held that Himalaya Clauses must be given effect because they prevent aggrieved parties from engaging in the very end run Plaintiffs are attempting in this case: suing agents of the ocean carrier rather than the carrier itself to avoid the application of COGSA.  *See Fed. Ins. Co. v. Union Pac. R.R.*, 651 F.3d 1175, 1180 (9th Cir. 2011) (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 536 (1995)); *Royal SMIT Transformers B.V. v. Onego Shipping & Chartering, B.V.*, 898 F.3d 543, 548 (5th Cir. 2018) ("In other words, [Himalaya Clauses] operate much like the mountain range by the same name, creating a barrier between the cargo owner and downstream carriers that can be neither scaled nor circumvented.").  Accordingly, Plaintiffs cannot avoid the application of COGSA through careful pleading in the Complaint.

The very case law cited by Plaintiffs proves this point. For example, Plaintiffs cite *Generali v. D'Amico*, 766 F.2d 485 (11th Cir. 1985) for the proposition that "COGSA is applicable only to carriers and ships . . . ." The quotation in full for that case is as follows:

> Inasmuch as COGSA is applicable only to carriers and ships, it would appear just as logical, and perhaps more appropriate, to include any such references within the clause or provision dictating the parties entitled to those benefits. It is clear from our reading of the bill of lading, particularly in regard to Provisions 1 and 21, that the carrier expressed a clear intent to extend limitation of liability benefits to those who may be engaged by, and on behalf of, the carrier to handle the subject cargo during the time in which the carrier was responsible for that cargo.

*Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). This quotation comes after the *Generali* Court's full analysis of COGSA application:

> It must be noted, however, that the limitation of liability provision contained in 46 U.S.C. § 1304(5) is applicable only to carriers and ships. The term "carrier" is defined as including "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C. § 1301(a). Since stevedores, terminal operators, freight handlers and other agents of the carrier do not come within this definition they are not automatically afforded the limitation of liability benefits provided by 46 U.S.C. § 1304(5). *See Robert C. Herd & Co., Inc. v. Krawill Machinery Corp.*, 359 U.S. 297, 302, 79 S. Ct. 766, 3 L. Ed. 2d 820 (1959). In *Herd*, the Supreme Court found "nothing in the provisions, legislative history and environment of the Act" to indicate any intention "to limit the liability of negligent agents of the carrier."

> Although COGSA does not operate to afford limitation of liability benefits to agents of the carrier, it is, however, well settled that parties to a bill of lading may contractually extend limitation of liability benefits to non-carriers and agents of the carrier. *See Robert C. Herd & Co., Inc. v. Krawill Machinery Corp., supra*, at 302, 305, 79 S. Ct. at 769, 771; *Secrest Machine Corporation v. S.S. Tiber*, 450 F.2d 285, 286 (5th Cir. 1971); *Rupp v. International Terminal Operating Co., Inc.*, 479 F.2d 674 (2d Cir. 1973).

> Bill of lading provisions which extend defenses and protections to the carrier's agents and contractors are known in Admiralty law as "Himalaya" clauses. Clauses such as these, which purport to limit the liability of carrier's agents or contractors, must be "strictly construed and limited to intended beneficiaries." *Robert C. Herd & Co. v. Krawill Machinery Corp., supra*, 359 U.S. at 305, 79 S. Ct. at 771. The clause itself must clearly express the understanding of the contracting parties through the "clarity of language used." *Id.*

*Generali v. D'Amico*, 766 F.2d 485, 487-88 (11th Cir. 1985).  Next, Plaintiffs cited to *Z.K. Marine, Inc. v. M/V Archigetis*, 776 F. Supp. 1549, 1555 (S.D. Fla. 1988) quoting "COGSA applies only to carriers and ships."  However, the quotation in full reads:

> The limitation of liability provisions of COGSA apply only to carriers and ships. 46 U.S.C. § 1304(5). The term "carrier" is defined as the owner or charterer who enters into a contract of carriage with the shipper. 46 U.S.C. § 1301. Thus, the liability provisions apply to the M/V Archigetis, Fedpac Lines and Malvern Maritime. These provisions do not afford limitation of liability benefits to agents of the carrier, such as Continental Stevedore Terminals, however, unless the parties contractually extend limited liability to non-carriers and agents of the carrier. *Generali v. D'Amico*, 766 F.2d 485 (11th Cir. 1985). In clause 19, the instant bills of lading extend the limitation of liability provisions to servants and agents of the carrier, including independent contractors.

*Z.K. Marine, Inc. v. M/V Archigetis*, 776 F. Supp. 1549, 1555 (S.D. Fl. 1991) (extending COGSA, and the limitations of liability afforded by COGSA, to the stevedores and terminal operators— non-carriers and non-ships). Contrary to Plaintiffs' allegations of deception to the Court, Scanwell MIA provided this analysis in its Motion to Dismiss. *See* Mot. to Dismiss, ECF 5, 10 n.4 ("Because the liability limitation contained in COGSA only protects the primary carrier, but not the carrier's agents or other parties participating in effectuating the shipment,  . . . , a Himalaya Clause is standard in the industry to extend this limitation beyond its normal parameters . . . .").

As the face of the International Bill of Lading makes clear, Scanwell MIA was an agent of Scanwell Container Line Ltd., the carrier for this shipment.  *See* Compl., Ex. A ("Delivery Agent: Scanwell Logistics (MIA) Inc."). *See* Compl., Ex. B.  And as noted, the parties agreed through the House Bill of Lading to extend such terms of COGSA to Scanwell MIA through the Himalaya Clause. *See* MTD, ECF No. 5, at pages 10-11.

Given these facts, COGSA preempts Plaintiffs' claims in this case. When COGSA applies, the scope of the actions falling under COGSA preemption is expansive.  Plaintiffs allege that

4

COGSA should not apply because Plaintiffs do "not sue under any bill of lading," and do "not allege any loss occurring during ocean transportation." *See* Resp. to MTD, ECF No. 12, at page 5. Additionally, in the Response to the Motion to Dismiss Plaintiffs seem to claim they are not seeking damages related to loss of Cargo. *See* Resp. to MTD, ECF No. 12, at page 5 ("The Complaint does not allege the loss of Cargo."). Despite such contention in the Response to Motion to Dismiss, Plaintiffs' Complaint provides: "As a result of Defendants' actions, Plaintiffs suffered both economic and noneconomic damages, including, but not limited to: a. Loss of the Laksala Goods; b. Lost profits related to the Laksala Goods" among other damages. *See* Compl. ¶ 53. While Plaintiffs seek other forms of damages in the Complaint in addition to lost cargo, these appear to be damages sought from Scanwell Colombo and not Scanwell MIA.

In another attempt to avoid COGSA preemption, Plaintiffs claim that the operative agreement under which Plaintiffs bring their complaint is the email correspondence attached to the Complaint as Exhibit A and not any bill of lading. *See* Resp. to MTD, ECF No. 12, at page 6. Specifically, Plaintiffs, in their Response refer to Exhibit A as "a written agreement concerning the arrangement of transportation services which specifically contains a list of the services to be provided, which are enumerated in the very next paragraph of the Complaint." *See* Resp., ECF 12, at 6. As more thoroughly explained in Scanwell MIA's Response in Opposition to Plaintiffs' Motion to Remand, a bill of lading was in fact issued for the transportation of the Laksala goods, Plaintiffs received a copy of that bill of lading before transportation commenced, and the bill of lading is the contract governing this shipment of goods. *See Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 19, 125 S. Ct. 385 (2004) ("A bill of lading records that a carrier has received goods from the party that wishes to ship them states the terms of carriage, and serves as

5

evidence of the contract for carriage."). Plaintiffs cannot simply claim that an email exchange is the operative contract.

However, even assuming, without admitting, that the bill of lading somehow does not apply, COGSA still applies.[1] In *Jeanty v. Antillean Marine Shipping, Corp.*, the plaintiff sought damages for loss of his truck. *See Jeanty v. Antillean Marine Shipping, Corp.*, 2023 U.S. Dist. LEXIS 218594 (S.D. Fl. Dec. 7, 2023). Mr. Jeanty hired Antillean Marine Shipping to transport his truck from Florida to Haiti. *See id.* at *1. Later in the case, it was discovered that the carrier never transported the truck. *See id.* at *5. Instead, the truck sat at Antillean's Florida terminal for over a year before being sold for scrap value. *See id.* at *7. Antillean never processed the U.S. Customs paperwork, and therefore, Antillean never shipped the truck and a bill of lading was never issued. *See id.* at *7. After learning a bill of lading was never issued and the truck never left the Antillean Florida terminal, Mr. Jeanty filed a motion to remand the case to state court arguing COGSA did not apply because no bill of lading was issued. *See id.* at *9-10. In opposition, Antillean argued that Antillean's standard bill of lading applied and extended COGSA's application to an earlier point in time before ocean transportation. *See id.* at *19-20. Although a bill of lading was never issued, the Court found that the parties had entered into a contract to ship

---

[1] To avoid any confusion, Paragraph 20 of Plaintiffs' Complaint states: "On October 21, 2021, Scanwell and Boom Lanka entered into an agreement to ship the Laksala Goods (defined below) to Miami, Florida (door-to-door delivery) in a 20-foot GP container (the 'Agreement') for a total cost of $12,750.00 (the 'Shipping Fee'). A copy of the Agreement is attached as Exhibit A." *See* Compl. ¶ 20. Exhibit A provides a price quote for transportation services from Colombo, Sri Lanka to Miami, Florida, including: "a. Freight Charges — from Colombo to Miami; b. Packing charges; c. Transport charges; d. Loading charges; e. All governmental approvals; f. Customs clearance; g. Port charges; h. Handling charges; i. Documentation charges; and j. Agency fees." *See* Compl. ¶ 21 (citing Exhibit A to Complaint). There is no question these charges are for ocean transportation of the Laksala Goods from Sri Lanka to Miami, Florida.

the truck from Florida to Haiti. *See id.* at *24 (citing *AAA Int'l Freight Forwarding Grp., Inc. v. King Ocean Serv. de Venezuela, S.A.*, 2000 U.S. Dist. LEXIS 21075, 2000 WL 33956708 (S.D. Fla. June 13, 2000) ("Finding *AAA*'s reasoning persuasive, we now reach the same conclusion and hold that Antillean's *regular form* bill of lading governs this dispute, even though no *specific* bill of lading was ever issued."). As the parties entered into an agreement for ocean transportation from Florida to Haiti, Antillean's ocean bill of lading applied because it *would have* issued its standard bill of lading for ocean transportation even though Antillean did not issue a bill of lading. *See id.* at *22-24.

This case is similar. Even if the email exchange between the parties somehow constituted the contract despite the fact that a bill of lading was issued,[2] Plaintiffs admit that they entered into an agreement for the transportation of cargo from Sri Lanka to Florida, and they now seek damages for the loss of the goods. *See* Compl. at ¶ 20 ("On October 21, 2021, Scanwell and Boom Lanka entered into an agreement to ship the Laksala Goods (defined below) to Miami, Florida (door-to-door delivery) in a 20-foot GP Container (the "Agreement") for a total cost of $12,750.00 (the "Shipping Fee"). A copy of the Agreement is attached as Exhibit A."); Compl. ¶ 26 ("On or about December 5, 2021, Defendants dispatched the Laksala Goods by sea freight. A copy of the International Bill of Lading is attached as Exhibit B."). Because the parties agreed to ocean transportation of the Laksala Goods and Scanwell Container Line Ltd. would have issued its standard International Bill of Lading (and it did, in fact, issue the bill of lading), the Scanwell Container Line Ltd. standard International Bill of Lading applies to this case. *See* Compl., Ex. B;

---

[2] A bill of lading was in fact issued for this shipment, the first page of which is attached to Plaintiffs' Complaint as Exhibit B (although an incomplete copy) and attached to Scanwell MIA's Motion to Dismiss as Exhibit A.

7

MTD, Ex. A.  Further, because the Scanwell Container Line Ltd. standard International Bill of Lading applies, COGSA applies through the Scanwell Container Line Ltd. International Bill of Lading by its explicit terms.  *See* MTD, ECF No. 5, Ex. A. ("As far as carriage of goods by sea or inland waterway is concerned, the Carrier's liability shall be determined by the Hague Rules or any legislation (such as COGSA) making such Rules or the Hague-Visby Rules compulsorily applicable to this Bill of Lading, and the Hague Rules or the Hague-Visby Rules shall prevail in so far as they are inconsistent with any other terms of this Bill of Lading except Clause 2.3."). Here, Plaintiff cannot escape the application of the Scanwell Container Line Ltd. International Bill of Lading despite artful wording. Even if Scanwell Container Line Ltd. never issued a bill of lading, which it did, the Eleventh Circuit applies the Scanwell Container Line Ltd.'s International Bill of Lading because it would have issued the bill of lading prior to the ocean transportation of Plaintiffs' goods.

Despite the allegations in Plaintiffs' Complaint alleging damages stemming from the loss of goods, Plaintiff remains adamant that it is not seeking damages from the loss of goods due to ocean transportation, which Plaintiffs believe will avoid COGSA application.  However, this theory has also been addressed by courts in the Eleventh Circuit.  *See, e.g.*, *Seafarers, Inc. v. King Ocean Servs. Ltd.*, 2015 U.S. Dist. LEXIS 69641, at *5-6 (S.D. Fl. May 29, 2015) ("Plaintiff argues that remand is warranted because neither the Harter Act nor COGSA apply since its claims do not relate to any damage or loss to the exported goods themselves. I disagree. COGSA applies to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade."). Importantly, Courts have applied COGSA to the failure to deliver goods even under similar circumstances to this case. *See Russul Corp. v. Zim American Integrated Shipping Services Co., Inc.*, 2009 U.S. Dist. LEXIS 91098, 2009 WL 3247141, at *2 (S.D.N.Y. Oct. 5, 2009) (COGSA

8

applied to loss suffered when U.S. Customs and Border Control seized and auctioned goods that were shipped without necessary exportation documentation); *Atlantic Overseas Corp. v. Feder*, 452 F. Supp. 347, 350 (S.D.N.Y. 1978) (COGSA applicable to carrier's indemnity claim against shipper for amounts paid by carrier to foreign customs authorities as a result of shipper's failure to accurately report weight of cargo); *Distribuidora Internacional Alimentos, S.A. v. Amcar Forwarding, Inc.*, 2011 U.S. Dist. LEXIS 25138, 2011 WL 902093, at *2 (S.D. Fla. March 11, 2011) (COGSA applicable to loss resulting from foreign customs authorities' seizure of goods and detention for several months after carrier issued a bill of lading with incorrect information regarding the amount of merchandise in the shipment).  Therefore, regardless of the attempted characterization by Plaintiffs in their Response to the Motion to Dismiss, the allegations in the Complaint fit squarely within COGSA.

Plaintiffs here go to great length to avoid COGSA's preemptive reach. The courts have long rejected these attempts while preserving the rights of carriers and their agents to benefit from COGSA's terms. For example, In *Federal Insurance Company v. Union Pacific Rail Road*, the Ninth Circuit Court of Appeals upheld a clause in an ocean bill of lading, which foreclosed the shipper from filing suit against the subcontractors of the carrier. *Fed. Ins. Co. v. Union Pac. R.R.*, 651 F.3d 1175 (9th Cir. 2011). "The covenant not to sue forces the 'Merchant' — here, Text International — to bring all suits against the 'Carrier' — here, APL — even for damage caused by a 'Sub-Contractor' like UP. This arrangement is lawful under the Hague Rules, which are again functionally identical to COGSA." *Fed. Ins. Co.*, 651 F.3d at 1179 (citing COGSA § 3(8), 46 U.S.C. § 30701 note, and Hague Rules, Art. 3(8), 51 Stat. 233).  In the bill of lading applicable to our case, a similar provision exists foreclosing suit against Scanwell MIA: "The Merchant undertakes that no claim shall be made against any employee, agent or sub-contractor of the Carrier

9

if such claim imposes upon them any liability in connection with any Services provided by the Carrier." *See* MTD, ECF 5, at page 10; MTD, Ex. A. Again, it makes no difference if Plaintiffs prefer to bring suit against Scanwell MIA as opposed to Scanwell Container Line Ltd. *See Fed. Ins. Co.*, 651 F.3d at 1180 ("It makes no difference that the covenant not to sue might make it more difficult as a practical matter for FIC to recover damages. . . . FIC may have some unarticulated, practical preference for suing UP rather than APL, but it disavowed that preference when it agreed to the covenant not to sue."). In this instance, the terms of the bill of lading extend COGSA to Scanwell MIA and foreclose suits brought against Scanwell MIA. In sum, Plaintiffs cannot contract for ocean transportation of their goods and then avoid the law that governs such transactions through artful pleading. Therefore, Plaintiffs' Complaint must be dismissed as a matter of law.

For the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Dismiss.

This the 8th day of October, 2024.		Respectfully submitted,

*/s/ Todd C. Rubenstein*
Todd C. Rubenstein, Esq.
Florida Bar No. 1016639
TAYLOR NELSON PL
20 3rd Street SW, Suite 209
Winter Haven, FL 33880
(863) 875-6950 (tel)
trubenstein@taylorlawpl.com
efiling@taylorlawpl.com
krieck@taylorlawpl.com

C. Fredric Marcinak, Esq.
Admitted Pro Hac Vice
MOSELEY MARCINAK LAW GROUP LLP
P.O. Box 26148

                                                Greenville, S.C. 29616
                                                (864) 248-6027 (tel)
                                                fred.marcinak@momarlaw.com
                                                Hannah.bridges@momarlaw.com

*Counsel for Defendant*
*Scanwell Logistics (MIA), Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing upon all parties to this matter by e-filing the same with the Court's CM-ECF system, which shall notify all parties of record.

This the 8th day of October 2024.

                                                */s/ Todd C. Rubenstein*
                                                Todd C. Rubenstein, Esq.