**UNITED STATES DISTRICT COURT**
**FOR SOUTHERN DISTRICT OF FLORIDA**

BOOM LANKA BATHIK & GIFTS, LLC; and
SURDARMA WARNAKULASOORIYA

      Plaintiffs,

vs.                                                                 Case No. 1:24-cv-23151-JB

SCANWELL LOGISTICS (USA), INC.;
SCANWELL LOGISTICS COLOMBO
(PVT) LTD.; and ALPHA BROKERS
CORPORATION

      Defendants.
_____/

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR REMAND**

      COMES NOW, Plaintiffs, BOOM LANKA BATHIK & GIFTS, LLC; and SURDARMA WARNAKULASOORIYA, by and through the undersigned counsel, and files this, their Reply Memorandum in Further Support of their Motion for Remand, and in support thereof states as follows:

      I.      **DISCUSSION.**

      a.  **The Declaration Submitted By Scanwell Miami Should be Stricken.**

      As set forth in the Motion for Remand, Scanwell's notice of removal is replete with blatant misrepresentations of the law and the very factual allegations themselves. In its Opposition, Scanwell does not even address these contentions.

      Instead, Scanwell's <u>entire</u> Opposition is premised upon a declaration which is not only inadmissible but contains multiple misrepresentations and outright lies. Unfortunately, this is not surprising, given Scanwell's deceptive actions giving rise to this lawsuit and its attorneys' blatant omissions and misrepresentations as to the allegations of the complaint and the caselaw cited in the Notice of Removal and the Motion to Dismiss.

Scanwell attaches to its Opposition to the Motion for Remand (and its Reply to its Motion to Dismiss[1]) the sworn Declaration of Ryan Fung, President of Scanwell Miami. Mr. Fung makes several statements in his sworn Declaration which are inadmissible and/or outright false.

Specifically, Mr. Fung, as President of Scanwell Miami, declares that he "has personal knowledge of the matters set forth herein or they have been made known to me by an investigation of corporate business records." [Decl. Fung, ECF 15-1 at ¶2].

Mr. Fung makes no distinction at all as to which statements are based on his personal knowledge and which are based on corporate records. Further, Mr. Fung does not provide any indication as to what records are kept by Scanwell Miami or – critically – that these records are kept in the ordinary course of business.

Mr. Fung then goes on to make affirmative statements regarding documents and communications for which Scanwell Miami had no involvement whatsoever.

Mr. Fung states: "I have knowledge of the communications between employees of Boom Lanka Bathik & Gifts, LLC, and/or Surdarma Warnakulasooriya and Scanwell Logistics Colombo (Pvt) Ltd. ("Scanwell Colombo") prior to the ocean transportation of the subject shipment." [ECF 15-1 at ¶5]. Critically, what is missing is how Mr. Fung has knowledge of communications between plaintiff and Scanwell Colombo. Are the communications of Scanwell Colombo contained in the corporate records of Scanwell Miami? Was Mr. Fung part of these discussions? Did someone at Scanwell Colombo tell Mr. Fung of these communications? There is simply no indication whatsoever as to the basis of this knowledge.

---

[1] Notably, the bill of lading was attached to Scanwell Miami's Motion to Dismiss [D.E. 5]. Plaintiffs challenged the admissibility of the document since Scanwell Miami made no effort at all to authenticate same. Now, Scanwell Miami attempts to rehabilitate this failure in its Opposition, as well as in its Reply to the Motion to Dismiss.

Mr. Fung then goes on to state: "I have knowledge of and am familiar with the bill of lading used for the subject shipment, which is the Scanwell Container Line., Ltd. International Bill of lading attached hereto as Exhibit A". [ECF 15-1 at ¶6]. Again, there is no indication whatsoever as to the basis of this knowledge.

Indeed, Mr. Fung does declare: "I have knowledge of the systems and procedures in place at Scanwell Logistics (MIA), Inc. to receive, investigate, and resolve freight claims, including but not limited to records-keeping related to the receipt of any freight claim submitted to Scanwell Miami." [Decl. Fung, ECF 15-1 at ¶3]. Yet, critically, Mr. Fung does <u>not</u> state that he has knowledge of, or access to, records of Scanwell Colombo or Scanwell Container Line.

But there is more. Mr. Fung then provides sworn statements that:

(1) this Exhibit A "is the standard International Bill of Lading issued by Scanwell Container Line, Ltd. for all of Scanwell Container Line, Ltd.'s shipments." [ECF 15-1 at ¶6]; and

(2) "the reverse side (third page of Exhibit A) of the Scanwell Container Line, Ltd. International Bill of Lading attached hereto as Exhibit A is the standard reverse side of the International Bill of Lading issued by Scanwell Container Line, Ltd. for <u>all</u> of Scanwell Container Line, Ltd.'s shipments." [ECF 15-1 at ¶7].

Mr. Fung thus makes these sworn statements as to bills of lading, and the terms and conditions thereof, which are issued by a separate legal entity for <u>all</u> of that separate legal entity's shipments – all without any indication whatsoever as to how he knows this. Are Scanwell Container Line's corporate records part of Scanwell Miami's corporate records? Does Mr. Fung have personal knowledge of each and every bill of lading issued by Scanwell Container Line? Again, there is absolutely no indication.

This is critical since Scanwell's <u>entire</u> Opposition is premised upon the applicability of this bill of lading and the terms and conditions supposedly contained on the "third page" of same

3

– which were purportedly sent to plaintiff by Scanwell Colombo.

The remainder of the sworn statements of the Declaration are equally lacking foundation and are inadmissible. Each and every one of the statements contained in the Declaration involve communications or actions taken by Scanwell Colombo, without any indication as to how Mr. Fung has this knowledge. For example, Mr. Fung states:

(1) <u>Scanwell Colombo</u> sent plaintiffs a price quote via email – attached to the Declaration as Exhibit B. [ECF 15-1 at ¶9];

(2) <u>Scanwell Colombo</u> advised Plaintiffs that the Goods could not fit into a 20 foot container. [ECF 15-1 at ¶10];

(3) <u>Scanwell Colombo</u> sent a revised quote – attached to the Declaration as Exhibit C. [ECF 15-1 at ¶11];

(4) Prior to the transport, <u>Scanwell Colombo</u> sent Plaintiffs a copy of the bill of lading – attached to the Declaration as Exhibit D. [ECF 15-1 at ¶12];

(5) After the vessel departed, <u>Scanwell Colombo</u> again sent Plaintiffs a copy of the bill of lading. [ECF 15-1 at ¶14];

(6) After the Goods were loaded, <u>Scanwell Colombo</u> discovered that plaintiff did not have the necessary licenses and approvals to import the Goods into the United States despite assurances from Plaintiffs otherwise". [ECF 15-1 at ¶17]; (here, not only does Mr. Fung allege what <u>Scanwell Colombo</u> discovered, but that plaintiffs made assurances as well).

Mr. Fung thus makes multiple sworn statements as to actions, statements, discoveries and beliefs of third parties, without any indication as to how he obtained this knowledge. The Declaration submitted by Scanwell Miami is woefully insufficient and inadmissible. *See* Fed. R. Evid. 803(6). Further, it is just implausible that Mr. Fung could actually have this knowledge and there is no indication how he came by the knowledge, particularly the emails and documents of third parties. Since the Opposition is based entirely upon Mr. Fung's Declaration, and the

4

unauthenticated documents (including the bill of lading) attached thereto, the Opposition should be completely disregarded, and the Motion for Remand should be granted.

But what is perhaps more disturbing is that the sworn statements made by Mr. Fung are blatantly false. Attached hereto as Exhibit "A" is the Declaration of Surdarma Warnakulasooriya, President of the plaintiff, Boom Lanka Bathik & Gifts, LLC. Ms. Warnakulasooriya has personal knowledge of all communications with both Scanwell Colombo and Scanwell Miami. Ms. Warnakulasooriya directly addresses each of the false or inaccurate statements made by Mr. Fung.

First, the bill of lading (which plaintiff attached to the Complaint as Exhibit "B") was not sent to plaintiffs until <u>after</u> the vessel had departed. [Exhibit "A", Decl. Warnakulasooriya at ¶ 11]. Mr. Fung states that plaintiffs were provided a copy of the bill of lading "prior to ocean transport" as evidenced by Exhibit "D". [ECF 15-1 at ¶12]. Yet, plaintiffs never received the email set forth in Exhibit "D", which curiously does not contain any date or time at all. [Exhibit "A" at ¶¶ 14 and 15]. Also curiously, the email address "dotdigitalsl@gmail.com" is a personal email address of Priyankarage Chaminda Manjula Kumara, who is an employee of the very same Sri Lankan Minister who ordered Ms. Warnakulasooriya's arrest, who happens to be the father-in law of Scanwell Colombo's Vice President, Yajeewa Witharanage. [Exhibit "A" at ¶ 15].

Mr. Fung then goes on to state that plaintiffs "approved the ocean bill of lading to be issued by Scanwell Container Line". [ECF 15-1 at ¶13]. Yet, Mr. Fung does not identify any email or other correspondence referencing such approval. Not surprisingly, no such approval was ever provided since plaintiffs were not sent the bill of lading. [Exhibit "A" at ¶ 17].

Mr. Fung persists with his narrative, stating (without support) that Scanwell <u>Colombo</u> sent a copy of the bill of lading to Plaintiffs on December 6, 2021. [ECF 15-1 at ¶14]. To be clear, Mr.

5

Fung is declaring under oath that the bill of lading that he attached as Exhibit A – containing the terms and conditions of service on page 3 – were sent to plaintiffs on December 6, 2021.

This sworn statement by Mr. Fung is false. The only bill of lading received from Scanwell Colombo was sent via WhatsApp on December 6, 2021. [Exhibit "A" at ¶¶ 10, 11, 17, 18]. This bill of lading – in its entirety, and exactly as it was received from Scanwell – was attached to the Complaint as Exhibit "B". [Exhibit "A" at ¶ 11]. Attached to the Declaration of Ms. Warnakulasooriya as Composite Exhibit "A" are true and correct copies of her WhatsApp conversation with Yajeewa Witharanage, of Scanwell Colombo. [Exhibit "A" at ¶ 12]. As can be seen, the bill of lading is clearly noted to contain only 2 pages and is included in the Composite Exhibit. [Exhibit "A" at ¶ 12]. The third page of Scanwell's Exhibit "A" (as referenced in the Declaration of Ryan Fung) was never received by Ms. Warnakulasooriya or any employee of Boom Lanka. [Exhibit "A" at ¶¶ 12, 13].

Further, the ocean carrier for the subject shipment was specifically identified by Scanwell Colombo as "CMA CGM" and on December 4, 2021, Scanwell Colombo sent a link to CMA CGM's website so the shipment could be tracked. [Exhibit "A" at ¶ 21]. At no time prior to the shipment did plaintiffs have any knowledge of a company named "Scanwell Container Line". [Exhibit "A" at ¶ 19]. At all times, plaintiff understood that Scanwell Colombo would arrange for the transportation of the shipment via ocean carrier to the Port in Miami. [Exhibit "A" at ¶ 20].

Further, at all times, plaintiff was made to believe that Scanwell Miami would act as agent for Scanwell Colombo in order to clear the shipment through U.S. Customs. [Exhibit "A" at ¶ 22]. As set forth above, Mr. Fung stated that Scanwell Colombo discovered that plaintiffs did not have the necessary licenses and approvals to import the goods into the U.S. and that this was the reason that U.S. Customs detained the goods. This is completely false – as evidenced by Scanwell

Miami's own correspondence (which Mr. Fung presumably does, in fact, have access to). Specifically, as Scanwell Miami advised plaintiffs – in April 2022 (5 months after the shipment) – the delays with respect to Customs clearance was due to the improper classification codes entered by Alpha Brokers (the customs broker retained by Scanwell). [Exhibit "A" at ¶ 23, 24]. This notification took place <u>after</u> the shipment arrived and after U.S. Customs held same. [Exhibit "A" at ¶ 23]. Thus, Mr. Feng's representations that the shipment was held after being loaded aboard the vessel and was the result of plaintiff's failure to obtain the necessary licenses and government approvals is undermined by his own documents.

Moreover, Scanwell Miami's own communication specifically provides that Scanwell Colombo would actually take care of the demurrage and warehouse charges as a result of Alpha Brokers' errors. [Exhibit "A" at ¶ 24].

Finally, as is made clear by the price quotation from Scanwell (attached as Exhibit "B" to Mr. Fung's Declaration and the documents specifically identified as the subject Agreement in the Complaint), it was <u>Scanwell's</u> responsibility to obtain all government approvals. [Exhibit "A" at ¶ 25]. As such, Mr. Fung's sworn statement that any delay was the result of plaintiff's failure obtain the government approvals is completely undermined by the very documents he identifies in his Declaration.

It is uncertain whether Mr. Fung was merely mistaken in his assertion (since he clearly has no knowledge of what he was stating) or whether he is just flat out lying. Either way, the Declaration – and the documents attached thereto – must be disregarded.

    **b.   COGSA remains inapplicable.**

Scanwell's citations to caselaw are as misleading and false as the sworn statements made by Mr. Fung. Unfortunately, this seems to be typical of Scanwell's submissions to this Court as its motion to dismiss, its notice of removal, its reply in support of the motion to dismiss and the Opposition to the instant motion are all replete with inaccurate and/or inapplicable case law. For example, Scanwell cites to numerous cases for the proposition that "Importantly, Courts have applied COGSA to the failure to deliver goods even under similar circumstances to this case." [Opposition, ECF 15 at p. 9]. Scanwell cites to *Russul Corp. v. Zim American Integrated Shipping Services Co., Inc.*, 2009 WL 3247141, at *2 (S.D.N.Y. Oct. 5, 2009) as such a 'similar' case which purportedly held that "COGSA applied to loss suffered when U.S. Customs and Border Control seized and auctioned goods that were shipped without necessary exportation documentation". [Opposition, ECF 15 at p. 9]. Notably, *Russul* is not similar to the facts of this case at all. Regardless, and most importantly, in that case there was no dispute by the parties that the bill of lading which incorporated COGSA was applicable. Here, that is clearly not so.

Scanwell also cites to *Resources Recovery, Inc. v. China Ocean Shipping (Group) Co.*, 1998 WL 474134, at *2 (S.D.N.Y. Aug. 11, 1998) for the holding that "COGSA applicable to loss suffered when cargo was forced from transshipment port back to China due to lack of proper customs documents". [Opposition, ECF 15 at p. 9]. Yet, Scanwell neglects to mention that the plaintiff in that case was in fact suing the carrier under COGSA.

Undaunted, Scanwell also cites to *Distribuidora Internacional Alimentos, S.A. v. Amcar Forwarding, Inc.*, 2011 WL 902093, at *2 (S.D. Fla. March 11, 2011) for the argument that "COGSA applicable to loss resulting from foreign customs authorities' seizure of goods and detention for several months after carrier issued a bill of lading with incorrect information regarding the amount of merchandise in the shipment." [Opposition, ECF 15 at p. 10].

Yet, in that case, the plaintiff therein (again) not only brought suit under COGSA, but the claim therein alleged the failure of the carriers to put the required information on the bill of lading which led to their seizure. *Distribuidora*, 2011 WL 902093 at * 2. Here, the failure was the result of Scanwell Colombo and/or Scanwell Miami and/or the customs broker they hired to provide the correct classification code on the Customs entry documents.

Finally, Scanwell relies upon this Court's decision in *Jeanty v. Antillean Marine Shipping, Corp.*, 2023 WL 8518957 at * 5 (S.D. Fla. Dec. 7, 2023) in support of its argument that the terms of a bill of lading would apply even if the shipper never received same. [Opposition, ECF 15 at p. 11. However, Scanwell fails to mention that, in that case, the shipper signed a warehouse receipt which specifically referenced the applicability of the carrier's bill of lading. *Id.* at * 7. Again, that is not the case here.

Further, Scanwell's reliance is misplaced since all of the cases it cites involved <u>carriers</u>. Here, Scanwell clearly states that it is not a carrier. [Opposition, ECF 15 at p. 7]. Indeed, plaintiffs seek to remand this case largely on the ground that COGSA is inapplicable to entities such as Scanwell Miami. That is, in all of the cases relied upon by Scanwell, the shippers had hired the carrier and, as such, the shippers therein, were essentially charged with knowing the terms of the bills of lading. Here, plaintiffs did not hire Scanwell Container Line. Plaintiffs hired Scanwell <u>Colombo</u> who advised plaintiffs that the shipment would be aboard a CMA CGM vessel, and they could track same via CMA CGM's website. Plaintiffs were at no time aware that Scanwell Container Line would be the carrier and did not receive the Scanwell Container Line bill of lading until after the vessel departed. And the bill of lading sent by Scanwell Colombo did not contain any terms and conditions whatsoever, despite Scanwell's deceptive assertions to the contrary.

But Scanwell's citation to *Jeanty* is nevertheless useful since this Court reiterated the long-standing principle that "[i]n evaluating whether the 'particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Id*. at * 5 (quoting *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (and citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

Further, as set forth in the *Russul* case cited by Scanwell in its Opposition, the District Court therein engaged in an analysis of COGSA which is pertinent to the instant motion. That is, the District Court discussed the meaning of "delivery", which dictates when COGSA applies and when it ceases to apply.

Here, as Scanwell readily admits by its exhibits, the subject transport ended at the Port of Miami. Specifically, as the Agreement between the parties makes clear, the movement was from Door to Port. [Compl. ECF 1-3 at Exhibit "A"]. Scanwell attaches same to its Opposition. [ECF 15-1, Exhibits "B" and "C"]. As such, the responsibilities of the carrier – Scanwell Container Line or whoever – ceased when the shipment arrived at the Port of Miami. Likewise, if COGSA applied, it ceased to apply once the shipment was offloaded from the vessel. Scanwell can urge the Court to hold that Scanwell Container Line's responsibilities extended after arrival – but there is absolutely no evidence, admissible or otherwise, to support such contention.

Finally, although a carrier may extend the application of COGSA after discharge (which is not the case here), it may not extent it to a period of time when the carrier no longer has custody or control over the cargo. *See Underwriters at Interest Under Bailee Insurance Policy No.*

*09RTAMIA1158 v. Seatruck, Inc.*, 858 F.Supp.2d 1334, 1339 (S.D. Fla. 2012) (collecting cases). Here, by the terms of the Agreement, and as reflecting on the face of the inadmissible bill of lading, the carrier's responsibility ended at the Port upon discharge from the vessel.

Given the disagreements regarding jurisdiction which are clearly presented, coupled with Scanwell's misrepresentations and the completely baseless (and yet still false) sworn statements by Mr. Fung, there is, at minimum, plenty of uncertainty here which would mandate that this case be remanded.

Dated: October 23, 2024

                                                Respectfully submitted,

                                                **SPECTOR RUBIN, P.A.**

By:   */s/ Robert Borak*
       Robert Borak, Esq. (FBN: 015923)
       3250 Mary Street, Suite 405
       Miami, Florida 33133
       Telephone: 305-537-2000
       Facsimile: 305-537-2001
       Email: robert.borak@spectorrubin.com

*Of Counsel for Plaintiff*

**NADKARNI LAW PLLC**
Kaustubh Nadkarni, Esq.
Fla. Bar No. 98708
1900 N. Bayshore Drive, Unit 1A
Suite 140
Miami, Florida 33132
(786) – 300 – 1227
ip@nadkarnilaw.com
assistant@nadkarnilaw.com
staff@nadkarnilaw.com

*Attorneys for Plaintiff*

Omar Ali-Shamaa, Esq.
Fla. Bar No. 121461
Omar@alishamaalaw.com

*Of Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was filed on October 23, 2024, *via the Court's CM/ECF system*, which shall notify all parties of record.

**SPECTOR RUBIN, P.A.**

By:  /s/ Robert Borak
     Robert Borak, Esq. (FBN: 015923)