IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BOOM LANKA BATHIK & GIFTS,　　　)
LLC, and SURDARMA　　　　　　　　)
WARNAKULASOORIYA,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　　C.A. No.: 1:24-cv-23151-JB
　　　　vs.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
SCANWELL LOGISTICS (MIA), INC.;　　)
SCANWELL LOGISTICS COLOMBO　　)
(PVT) LTD; and ALPHA BROKERS　　　)
CORPORATION.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　　)

**DEFENDANT SCANWELL LOGISTICS COLOMBO (PVT) LTD'S MOTION TO
DISMISS PLAINTIFFS' COMPLAINT AND INCORPORATED
<u>MEMORANDUM OF LAW</u>**

Defendant, Scanwell Logistics Colombo (Pvt) Ltd ("Scanwell Colombo"), by and through

its undersigned counsel, files this Motion to Dismiss Plaintiffs' Complaint as to it pursuant to

Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, pursuant to the

doctrine of *forum non conveniens*, and Rule 7.1 of the General Rules for the U.S. District Court of

the Southern District of Florida.  More specifically, Scanwell Colombo moves to dismiss all causes

of action alleged by Plaintiffs Boom Lanka Bathik & Gifts, LLC ("Boom Lanka") and Surdarma

Warnakulasooriya ("Warnakulasooriya") for lack of personal jurisdiction pursuant to Rule

12(b)(2).  Scanwell Colombo also seeks dismissal of Plaintiff Boom Lanka's causes of action

pursuant to Rule 12(b)(6) as such causes of action are preempted by the Carriage of Goods by Sea

Act ("COGSA") and must also be dismissed pursuant to the terms of the bill of lading applicable

to the shipment at issue in this case. Further, Scanwell Colombo moves to dismiss Plaintiff Boom

Lanka's claims pursuant to Rule 12(b)(3) for improper venue. Finally, if the Court determines it has personal jurisdiction over Scanwell Colombo, Scanwell Colombo respectfully requests the Court decline to exercise such jurisdiction and dismiss the causes of action asserted by Plaintiff Warnakulasooriya pursuant to the doctrine of *forum non conveniens*.

## <u>INTRODUCTION</u>

This case arises from the transportation of Sri Lankan traditional handicraft products ("Cargo") from Sri Lanka to Miami, Florida (Comp. ¶¶ 17-22). Plaintiffs' Complaint alleges that the cargo was never delivered to Plaintiffs due to U.S. Customs holding the goods subject to various fees and costs (Comp. ¶¶ 31-36).

As Plaintiffs allege, Scanwell Colombo is a Sri Lankan company based in Colombo, Sri Lanka. (Comp. ¶ 5). Plaintiff Boom Lanka alleges causes of action against Scanwell Colombo for Breach of Contract and Breach of Good Faith and Fair Dealing, while Plaintiff Warnakulasooriya alleges causes of action for Intentional Inflection of Emotional Distress and Malicious Prosecution, (Comp. ¶ 55-91). Specifically, Plaintiff Boom Lanka alleges that Scanwell Colombo "breached the Agreement by failing to deliver the [Cargo]." (Comp. ¶¶ 59, 75). Plaintiff Warnakulasooriya's causes of action relate to a case in the District Court of Colombo, Case No. DMR/2553/22, brought by Scanwell Colombo in order to recover certain fees related to the transaction. ("Sri Lanka Action") (Comp. ¶ 45-46). Specifically, Plaintiff Warnakulasooriya alleges that the Sri Lanka Action is frivolous and that she suffered emotional distress as a result of it. Attached to Plaintiffs'

Complaint as Exhibit B is a portion of the International Bill of Lading under which the Cargo was transported. (Comp. ¶ 26, Ex. B)[1].

## ARGUMENT

**A.     ALL CAUSES OF ACTION ASSERTED BY PLAINTIFFS AGAINST SCANWELL COLUMBO (COUNTS I, II, III AND IV) MUST BE DISMISSED UNDER F.R.C.P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION**

### I.   Scanwell Colombo is not subject to this Court's jurisdiction under Florida's long-arm statute

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exits: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  "A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first [Fla. Stat.] section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction – that is, jurisdiction over suits that arise out of or relate to defendant's contacts with Florida . . . ." *Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1203-04 (11th Cir. 2015). "[S]econd, [Fla. Stat.] section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity.'" *Id*. (quoting Fla. Stat. § 48.193(2)).  In addition to ensuring that the Court has

---

[1] The International Bill of Lading cited in Plaintiffs' Complaint as Exhibit B is illegible and fails to include the back page, which is expressly incorporated by reference on the front page: "SEE REVERSE SIDE FOR LIABILITY AND RESPONSIBILITY" and "The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back pages of this Bill of Lading". *See* Exhibit 1, Declaration of Yajeewa Roshan, Ex. A.

jurisdiction under Florida's long-arm statute, the Court must ensure that jurisdiction comports with the Due Process Clause of the United States Constitution. *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). "Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id*. (internal citations omitted).

"Under Florida law, the plaintiff bears the burden of proving jurisdiction . . . ." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996). "The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant." *Meier ex rel Meir v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). The court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by any affidavits submitted in support of a jurisdictional challenge. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If any affidavit is submitted challenging jurisdiction, Plaintiffs must substantiate the jurisdictional allegations in the Complaint through their own affidavits, testimony, or other evidence. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

As a preliminary matter, Plaintiffs' Complaint lumps all Defendants together despite the fact that Scanwell Colombo is a separate entity and requires a separate jurisdictional analysis. The Complaint first states that "This Court has personal jurisdiction over Defendants because, among other things, Defendants engage in substantial non-isolated activity within Florida." (Comp. ¶ 7).

This allegation simply mirrors Florida's long-arm statute for general personal jurisdiction and does not amount to the "specific facts" required to be pled by Plaintiff to establish jurisdiction. *See Seaboard Marine Ltd., Inc. v. Magnum Freight Corp.,* 2017 U.S. Dist. LEXIS 210236, 2017 WL 7796307 (S.D.F.L. 2017). In any event, as shown by the Declaration of Yajeewa Roshan, attached as Exhibit 1, the Complaint is incorrect that Scanwell Colombo engages in substantial activity within the state of Florida. Scanwell Colombo's principal place of business is Colombo, Sri Lanka. Its registered agent resides in Colombo. Its employees all reside in Colombo. Scanwell Colombo does not conduct any business in the State of Florida. This Court has long held that "a foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt.,* 789 F.3d 1201, 1205 (11th Cir. 2015). Scanwell Colombo ships cargo to and from locations all around the world. It has no special connection with the state of Florida, and Plaintiffs have pointed to no such connection other than the fact that Florida is one of the many locations that Scanwell Colombo, as the Sri Lankan agent for Scanwell Container Line, Ltd., shipped the cargo at issue in this case. Such a tenuous connection is not sufficient under Florida's long-arm statute, which requires "substantial, isolated activity" within the state.

Plaintiffs' Complaint also states that "Defendants personally, or through their agents, operate, conduct, engage in, or carry on a business or business venture in this state and/or committed a tortious act within the state. Moreover, Defendants breached a contract in the State of Florida by failing to perform acts required by the agreement to be performed in Miami-Dade County, Florida." (Comp. ¶ 7). Again, these sentences simply mirror Florida's long-arm statute

and do not allege any specific facts to show jurisdiction. In fact, Plaintiffs' own Complaint contradicts these allegations. As stated earlier in Plaintiffs' Complaint, Scanwell Colombo is a Sri Lankan company based in Colombo, Sri Lanka. (Comp. ¶ 5). Scanwell Colombo does not carry on a business venture in Florida and does not conduct any business in the State of Florida.

Plaintiff Boom Lanka's allegations regarding Scanwell Colombo's alleged breach of contract do not fall under the long-arm statute. Plaintiff Boom Lanka is presumably arguing that Florida's long-arm statute is intended to apply to any company who breaches a contract to ship goods to Florida. However, the long-arm statute says no such thing. Instead, the statute states that jurisdiction follows when the allegations involve "breaching a contract in this state by failing to perform acts required by the contract to be performed this state." Fla. Stat. § 48.193(1)(a)(7). Therefore, the relevant inquiry is not whether the contract involved Florida in any way, but whether the alleged breach by Scanwell Colombo occurred in Florida. The Complaint contains the following paragraphs, alleging that Scanwell Colombo: "moved the [cargo] into a 40 ft. container that was not inspected or approved." (Comp. ¶ 25); "used the wrong Harmonized System Codes ("HS Codes") for [the cargo] (Comp. ¶ 31); and "refused to deliver [the cargo] to Boom Lanka, unless it paid Scanwell $114,452.40" (Comp. ¶ 36). All of these alleged breaches occurred in Sri Lanka. Therefore, Florida's long-arm statute does not apply to Plaintiff Boom Lanka's causes of action in the Complaint against Scanwell Colombo, and this Court lacks jurisdiction over Scanwell Colombo.

Even if the Court determines Florida's long-arm statute applies to Plaintiff Boom Lanka's causes of action in the Complaint against Scanwell Colombo, which is expressly denied, there is no question that Florida's long-arm statute does not apply to Plaintiff Warnakulasooriya's causes

of action against Scanwell Colombo. Notably, Plaintiff Boom Lanka only alleged causes of action for breach of contract, and therefore, only "tortious acts" allegations belong to Plaintiff Warnakulasooriya. *See BluestarExpo, Inc. v. Enis*, 568 F.Supp.3d 1332, 1353 (S.D.F.L. 2021) ("Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims.") (citing *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC,* 8:20-CV-604-T-33JSS, 2020 U.S. Dist. LEXIS 161735, 2020 WL 5350303, at *5 (M.D.F.L. 2020)). The only "tortious act[s]" alleged in the Complaint are the causes of action by Warnakulasooriya for malicious prosecution and intentional infliction of emotional distress. (Comp. ¶¶ 37-52; 61-70; 83-91). However, there is no allegation whatsoever by Warnakulasooriya against Scanwell Colombo regarding any tortious act that occurred in the state of Florida; all acts complained of occurred in Sri Lanka. (Compl. ¶¶ 61-70). Specifically, Plaintiff Warnakulasooriya's cause of action for Malicious Prosecution stems solely from alleged frivolous litigation filed or caused to be filed by Scanwell Colombo *in Sri Lanka* and alleged detention of Plaintiff Warnakulasooriya *in Sri Lanka*.  (Compl. ¶¶ 46, 50, 69).  Similarly, Plaintiff Warnakulasooriya's only other cause of action against Scanwell Colombo is for Intentional Infliction of Emotional Distress. (Compl.  ¶¶  83-91).    Again,  Plaintiff Warnakulasooriya's cause of action for Intentional Infliction of Emotional Distress stems solely from alleged frivolous litigation filed or caused to be filed by Scanwell Colombo *in Sri Lanka* and alleged detention of Plaintiff Warnakulasooriya *in Sri Lanka*.  (Compl. ¶¶ 84, 87, 90). Accordingly, Florida's long-arm statute does not apply, and all causes of action alleged by Plaintiff Warnakulasooriya against Scanwell Colombo must be dismissed for lack of personal jurisdiction.

**II.  This action violates the Due Process Clause of the United States Constitution**

Even if Florida's long-arm statute applied to Scanwell Colombo, which is denied, this suit violates the Due Process Clause of the United States Constitution. The Due Process Clause analysis, much like Florida's long-arm statute, is split into general and specific personal jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations, without offending due process when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state" *Schulman v. Inst. for Shipboard Educ.*, 624 Fed. Appx. 1002, 1005 (11th Cir. 2015) (quoting *Int.'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945)) (internal citations omitted). "A corporation's operations in a forum other than its formal place of incorporation or principal place of business will be so substantial and of such as a nature as to render the corporation at home in that State only in exceptional cases." *Id.* (citing *Daimler AGB v. Bauman,* 571 U.S. 117 (2014)).   Again, Scanwell Colombo's only connection to the state of Florida is that it facilitates shipments around the world, which sometimes includes the usage of the port of Miami, Florida. This connection is not sufficient to render Scanwell Colombo essentially at home in Florida. If that were the case, a company that distributes goods throughout the United States could be sued in any state, allowing the Plaintiff to pick whichever forum would be most advantageous regardless of whether the company has any real connections to the state. The United States Constitution does not allow for such a result.

As to specific personal jurisdiction, the Due Process clause applies a three part test:

 (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73, 474-75 (1985).  For the first prong, the Court's inquiry must focus on "the direct causal relationship between the defendant, the forum, and the litigation. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355-56 (11th Cir. 2013). Under the second prong, the court must apply the "minimum contacts" test for purposeful availment, and ask whether Scanwell Colombo's contacts with Florida: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed [it]self of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id*. at 1357. This Court has further articulated that "the requirement that there be minimum contacts is grounded in fairness. It assures that 'the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there.'" *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Wooson*, 444 U.S. 286, 297 (1980)). Last, under the third prong, the Court must consider four factors to determine if personal jurisdiction in this matter comports with fair play and substantial justice. Those are: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute;  (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358. (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)).

Plaintiffs have failed to satisfy their burden to make a showing of personal jurisdiction under these three prongs. Under the first prong, Plaintiffs' allegations do not directly relate to the state of Florida. Rather, all of the allegations are related to Sri Lanka. Plaintiffs are alleging tortious actions and the breach of a Sri Lankan contract, both allegations involving acts committed by Sri

Lankan employees of a Sri Lankan company in Sri Lanka. As noted, the only connection to Florida is that it happened to be the intended delivery location of the cargo; none of the allegations occurred there. Under the second prong, Scanwell Colombo lacks minimum contacts with Florida such that it could reasonably anticipate being haled into court there. Scanwell Colombo facilitates shipments all over the world. Florida is simply one of many countless locations that cargo facilitated by Sri Lanka has been shipped to. Under the third prong, the state of Florida has no inherent interest in hearing this suit other than that it involves a Florida Plaintiff, which is not a sufficient interest to justify exercising jurisdiction. Additionally, it would be unfair and incredibly burdensome for Scanwell Colombo to be forced to defend this case in Florida. None of Scanwell Colombo's employees reside in Florida; it has no office in Florida; and all the potential witnesses in this case other than Plaintiff reside in Sri Lanka.

Finally, the fact that Scanwell Colombo entered into a contract to ship goods to Florida has previously been rejected as a sufficient minimum contact under the Due Process Clause to exercise jurisdiction. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784 (5th Cir. 1990) (Louisianna Court lacked jurisdiction when cargo ship sank in the Pacific ocean on route to Louisianna); *see also Francosteel Corp. v. The M/V Charm*, 825 F. Supp. 1074 (S.D. Ga. 1993) (Georgia Court lacked jurisdiction when cargo ship sank on route to Georgia). While these cases involved ships that sank en route to their respective destinations, they are still analogous to the present action. In this case, Plaintiffs specifically allege that the cargo was never permitted into the state of Florida due to an issue with U.S. Customs. (Comp. ¶ 30). It is the catalyst for this entire claim. Therefore, the allegations against Scanwell Colombo lack the connection to Florida required under the Due

Process Clause. In conclusion, this Court lacks personal jurisdiction under the Due Process Clause of the United States Constitution; and therefore, this action should be dismissed with prejudice.

**B.**   **ALL CAUSES OF ACTION ASSERTED BY PLAINTIFF BOOM LANKA AGAINST SCANWELL COLUMBO (COUNTS I AND III) MUST BE DISMISSED UNDER FRCP 12(B)(6) FOR FAILURE TO STATE A CLAIM**

**I.**   **Plaintiff Boom Lanka's Causes of Action against Scanwell Colombo are preempted by COGSA**

Scanwell Container Line, Ltd. has many different agents throughout the world acting on Scanwell Container Line, Ltd.'s behalf.  *See* Exhibit 1, Declaration of Yajeewa Roshan, ¶ 13. Scanwell Colombo is the Scanwell Container Line, Ltd. agent in Sri Lanka working with Sri Lankan customers on behalf of Scanwell Container Line, Ltd.  *See* Exhibit 1, Declaration of Yajeewa Roshan, ¶¶ 10-12.  Plaintiff Boom Lanka's Complaint alleges the loss of the Cargo occurred during the transport of the Cargo from Sri Lanka to Miami, Florida. (Compl. ¶ 20) ("On October 21, 2021, Scanwell and Boom Lanka entered into an agreement to ship the [Cargo] (defined below) to Miami, Florida (door-to-door delivery) in a 20-foot GP container . . . .").  As further explained, Plaintiff Boom Lanka's causes of action for Breach of Contract and Breach of Implied Covenant of Good Faith & Fair Dealing against Scanwell Colombo are preempted by the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 ("COGSA").

COGSA is an Act of Congress that governs damage to goods transported as ocean freight. As multiple courts have recognized, COGSA applies in the context of a multimodal import "through shipment" even where the damage occurs during an inland segment of the transport. Whether or not a maritime contract is involved becomes important in determining what scheme of carrier liability applies to a multimodal shipment.  The United States Supreme Court has established that COGSA applies when an import "through shipment" involves both international

ocean transportation and domestic overland transportation. *See Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 27 (2004). In making this determination, courts have considered: (1) the total amount of transportation on land versus by sea (i.e. the "most substantial" part of the transport); (2) whether one party has arranged the "door to door" transport (i.e. overland and ocean legs of transport); (3) whether one party invoices the shipper for the entirety of the trip; (4) whether one party pays each of the various transportation companies; (5) whether the shipper contracted with one party for all details of the shipment with the expectation that party would handle all aspects of the transportation; and (6) existence of a Himalaya Clause. Under this rubric, therefore, it becomes apparent the "door to door" transportation of the Cargo from Sri Lanka to Miami, Florida was a "through shipment." It follows therefrom that COGSA applies.

A motion to dismiss under Rule 12(b)(6) must be granted where the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). A motion to dismiss based upon preemption is treated as a motion to dismiss under Rule 12(b)(6).  *See, e.g. Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428–1429 (7th Cir. 1996) (assessing motion to dismiss under ADA preemption under Fed. R. 12(b)(6)).  Reviewing the allegations in Plaintiffs' Complaint, the most substantial part of the transportation was the ocean carriage as the Cargo traveled from Sri Lanka with the ultimate destination to be Miami, Florida.  *See* Exhibit 1, Declaration of Yajeewa Roshan, Ex. A.; (Compl. Ex. B).  Plaintiff claims that "Scanwell" [2]  and

---

[2] At various points in Plaintiffs' Complaint, Plaintiffs do not differentiate between Scanwell Logistics (MIA), Inc. and Scanwell Colombo. Instead, Plaintiffs refer to Scanwell to mean both Scanwell Logistics (MIA), Inc. and Scanwell Colombo. Scanwell Colombo and Scanwell Logistics (MIA), Inc. are entirely separate entities. However, we have mirrored Plaintiffs' allegations in the Complaint for purposes of analysis and reference "Scanwell" where Plaintiffs do not make such distinction.

Plaintiff  "entered into an agreement to ship the [Cargo] to Miami, Florida (door-to-door delivery in a 20-foot GP container . . . ."  (Compl. ¶ 20).  Further, "Scanwell" arranged for all stages of transportation.  (Compl. ¶ 29) ("Sometime in late 2021 or early 2022, Scanwell hired Alpha Brokers to assist with the shipment of the [Cargo]."); (Compl. Ex. A) (providing various requirements for approvals and delivery from Colombo to Miami, Florida).  "Scanwell" would invoice and in fact invoiced Plaintiff for the entirety of the trip. (Compl. Ex. A) ("Total cost is USD 12750 per container.")  "Scanwell" was to pay each of the various transportation companies and Plaintiff contracted with "Scanwell" to handle all aspects of the transportation.  (Compl. Ex. A) ("Above rate is inclusive of . . . Freight Charges . . . Packing charges . . . Transport charges . . . Loading charges . . . Approvals . . . Customs clearance . . . Port Charges . . . Handling Charges . . . Documentation charges . . . Agency fee."). Finally, the International Bill of Lading provides a Himalaya Clause. *See* Exhibit 1, Declaration of Yajeewa Roshan, Ex. A.

Where COGSA applies, it preempts all other causes of action, including causes of action under state law.  "The Eleventh Circuit holds that, where COGSA applies, it provides the plaintiff with an exclusive remedy." *Kelts v. Kind Ocean Servs.*, 2022 U.S. Dist. LEXIS 162359, at *6 (S.D. Fl. Sept. 8, 2022) (citing *Polo Ralph Lauren, L.P. v. Tropical Shipping & Const. Co.*, 215 F.3d 1217, 1220 (11th Cir. 2000) ("We conclude that because COGSA applies in this case, it provides [the plaintiff's] exclusive remedy.")).

Accordingly, the **<u>only</u>** cause of action Plaintiff Boom Lanka may maintain against Scanwell Colombo is pursuant to COGSA. Plaintiff Boom Lanka's causes of action for breach of contract and breach of implied covenant of good faith  and fair dealing attempt to set up different liability schemes under state law than is provided under COGSA, and as such they are preempted.

Importantly, Plaintiff Boom Lanka has not alleged a claim against Scanwell Colombo under COGSA. Thus, Plaintiff Boom Lanka's Complaint must be dismissed.

**II.     Alternatively, if COGSA does not apply, Plaintiff Boom Lanka's causes of action for breach of contract and breach of implied covenant of good faith and fair dealing must be dismissed because the contract at issue in this case precludes Scanwell Colombo from liability**

As the parties know, the bill of lading constitutes the contract of carriage between the parties. *Kirby*, 543 U.S. at  19 (2004) ("A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage."). As stated, the International Bill of Lading in its entirety provides specific terms and conditions to the carriage of the Cargo applicable to this case. *See* Exhibit 1, Declaration of Yajeewa Roshon, Ex. A.  The International Bill of Lading first provides definitions applicable to its terms.  Under the International Bill of Lading "Merchant" means "the shipper, the consignee, and the lawful holder of this Bill of Lading." *See* Exhibit 1, Declaration of Yajeewa Roshon, Ex. A.  Next, "Carrier" means Scanwell Container Line Ltd., a non-party to this action.  "Services" under the International Bill of Lading means "any services of the Carrier provided for the Merchant e.g. carriage of goods by sea, inland waterway, land, road, rail and/or air, and/or storage, labelling, loading, unloading, packing, unpacking, consolidation, de-consolidation, collection, delivery and/or other handling of goods."  Exhibit 1, Declaration of Yajeewa Roshon, Ex. A.  Section 5.2 under the International Bill of Lading contains a "Himalaya Clause,"[3] language exculpating

---

[3] The term *Himalaya Clause* is derived from the case of *Adler v. Dickson*, [1955] 1 Q.B. 158 (C.A.), involving the vessel *Himalaya*, and is used to describe contractual provisions that extend maritime liability limitations. *See Kirby*, 543 U.S. at 20 n. 2. Because the liability limitation contained in COGSA only protects the primary carrier, but not the carrier's agents or other parties participating in effectuating the shipment, *see Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359

Scanwell Colombo from any claims or actions alleged by Plaintiffs for the loss or damage to the Cargo. *See* Exhibit 1, Declaration of Yajeewa Roshon, Ex. A ("The Merchant undertakes that no claim shall be made against any employee, agent or sub-contractor of the Carrier if such claim imposes upon them any liability in connection with any Services provided by the Carrier."). Notably, the language provided in this Section is quite broad to include any liability *in connection* with any Services provided by the Carrier. The liability alleged by Plaintiff Boom Lanka against Scanwell Colombo through Plaintiff's causes of action is in connection with the Services provided by Scanwell Container Line Ltd. (Compl. ¶ 58, 74) ("Pursuant to the Agreement, Scanwell was required to ship the [Cargo] from Sri Lanka to Miami (door-to-door)."). Furthermore, Scanwell Colombo is an agent or sub-contractor of Scanwell Container Line Ltd. *See* Exhibit 1, Declaration of Yajeewa Roshon ¶ 10. Courts around the country have found that entities downstream from the ocean carrier in transportation are agents or subcontractors of the ocean carrier based on the interpretation of the particular clause in the ocean bill of lading. *Kirby*, 543 U.S. at 19 ("So that other downstream parties expected to take part in the contract's execution could benefit from the liability limitations, the bill also contains a so-called "Himalaya Clause.""). Although, Plaintiff Boom Lanka first engaged with Scanwell Colombo, Scanwell Colombo is and was the Sri Lankan agent of Scanwell Container Line Ltd. In this instance, because "Services" of the Carrier as defined in the International Bill of Lading are expansive—to otherwise include "labelling, loading, unloading, packing, unpacking, consolidation, de-consolidation . . . of goods"—the services provided by Scanwell Colombo were subcontracted from Scanwell Container Line Ltd. As

---

U.S. 297, 302-03 (1959), a Himalaya Clause is standard in the industry to extend this limitation beyond its normal parameters, *see Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 332 (2d Cir. 1993).

Scanwell Colombo is an agent of Scanwell Container Line Ltd., the Merchant/Plaintiff Boom

Lanka is foreclosed from bringing a claim against Scanwell Colombo.  Therefore, Plaintiff Boom

Lanka's Complaint against Scanwell Colombo must be dismissed with prejudice pursuant to Rule

12(b)(6) failure to state a claim for relief.

**C.  ALTERNATIVELY, ALL CAUSES OF ACTION ASSERTED BY PLAINTIFF BOOM LANKA AGAINST SCANWELL COLUMBO (COUNTS I AND III) MUST BE DISMISSED UNDER FRCP 12(B)(3) FOR IMPROPER VENUE**

In the alternative, Plaintiff Boom Lanka's causes of action against Scanwell Colombo must

be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue, as the

exclusive jurisdiction for disputes over the transportation of the Cargo is the courts of Hong Kong

Special Administrative Region.  As further explained in Section B of this Motion to Dismiss,

COGSA through applicable law and the International Bill of Lading apply to this case. "COGSA

both permits and promotes forum selection clauses similar to the one in the Bill at issue." *Siaci St.*

*Honore v. Ironbound Express, Inc.*, 884 F. Supp. 2d 100, 105 (S.D.N.Y. 2012); *Vimar Seguros y*

*Reaseguros, S.A., v. M/V Sky Reefer*, 515 U.S. 528, 528, 534, 115 S. Ct. 2322, 132 L. Ed. 2d 462

(1995) (holding that arbitration clause in bill of lading under COGSA was presumptively

enforceable). On the face of the International Bill of Lading, it provides: "The contract evidenced

by this Bill of Lading is governed by the law of the Hong Kong Special Administrative Region.

Any claim or dispute must be determined exclusively by the courts in the Hong Kong Special

Administrative Region and no other court."  The International Bill of Lading controlling the

shipment at issue in this case makes clear that any claim or dispute must be brought in the courts

of Hong Kong and no other court.

Mandatory and exclusive foreign forum selection clauses are presumptively valid and must be enforced absent a clear showing that they are unreasonable or unjust. *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). A forum-selection clause is invalidated only when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290-91 (11th Cir. 1998)). In this case, the forum selection clause provided in the International Bill of Lading is undoubtedly mandatory based on the use of the words "exclusive" and "no other court" the forum-selection clause at issue in this case is mandatory. Therefore, the forum-selection clause is presumptively enforceable.

Courts have enforced Hong Kong forum selection clauses in bills of lading finding Hong Kong an adequate forum. *See QT Trading L.P. v. M/V Saga Morus*, 2010 U.S. Dist. LEXIS 144887 (C.D. Cal. Nov. 5, 2010) (finding Hong Kong an appropriate forum for a COGSA action even if the plaintiff's suit could be time-barred in Hong Kong); *A.O. Smith Corp. v. Transpac Container Sys. Ltd.*, 2009 U.S. Dist. LEXIS 92007 (C.D. Cal. May 8, 2009). Accordingly, the substantive law applied by Hong Kong would not reduce the carrier's obligations below what COGSA guarantees.

As the forum selection clause in the International Bill of Lading is mandatory and Plaintiff Boom Lanka cannot point to any unreasonableness or unfairness in its enforcement, Plaintiff Boom Lanka's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure Rule 12(b)(3).

**D.   ALTERNATIVELY, ALL CAUSES OF ACTION ASSERTED BY PLAINTIFF WARNAKULASOORIYA AGAINST SCANWELL COLUMBO (COUNTS II AND IV) MUST BE DISMISSED UNDER THE DOCTRINE OF *FORUM NON CONVENIENS***

Admittedly, it is unlikely that the causes of action filed by Plaintiff Warnakulasooriya against Scanwell Colombo could fall under the purview of transportation of cargo, as the two causes of action are Malicious Prosecution and Intentional Infliction of Emotional Distress and the allegations stemming from such causes of action do not involve the carriage of goods.  Therefore, if the Court determines it has personal jurisdiction over Scanwell Colombo, which is denied, the Court should decline to exercise such jurisdiction over Plaintiff Warnakulasooriya's causes of action pursuant to the doctrine of *forum non conveniens*.

*Forum non conveniens* is a common law doctrine that provides a district court with power to decline to hear a case where there is a more convenient jurisdiction and venue. *Ott Candies LLC v. Citigroup, Inc.*, 963 F.3d 1338 (11th Cir. 2020). In order for the Court to grant a motion to dismiss on *forum non conveniens* grounds, the defendant must show: "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)). When considering a *forum non conveniens* motion, the court "must evaluate both the convenience of the parties (the private-interest factors) and various public interest considerations" *Usme v. Cmi Leisure Mgmt., Inc.*, 106 F.4th 1079, 1086 (2024) (citing *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 52 (2013)). "The private-interest factors include the 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

possibility of view of premises…; and all other practical problems to make trial of the case easy, expeditious, and inexpensive.'" *Id.* (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The public interest factors include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the difficulty in determining applicable law and foreign law." *Id.* (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

Here, all factors weigh in favor of the Court dismissing Plaintiff Warnakulasooriya's causes of action for *forum non conveniens*. As evidenced by Plaintiff Warnakulasooriya's allegations, Sri Lanka is the best alternative forum to hear Plaintiff Warnakulasooriya's causes of action. First, Plaintiff Warnakulasooriya cannot show that Sri Lanka is not an adequate alternative forum for these claims. As indicated by Plaintiff Warnakulasooriya's complaint, Sri Lanka has already been the venue for litigation between Plaintiff Warnakulasooriya and Scanwell Colombo. Next, both private interest factors and public interest factors support dismissal of Plaintiff Warnakulasooriya's causes of action in favor of Sri Lanka because Plaintiff Warnakulasooriya's causes of action almost entirely involve alleged acts against a Sri Lankan company which occurred in Sri Lanka involving Sri Lankan citizens and witnesses. Accordingly, the private interest factors weigh heavily in favor of dismissing Plaintiff Warnakulasooriya's causes of action to be brought in a Sri Lankan court. Many potential witnesses named in Plaintiff Warnakulasooriya's causes of action are all located in Sri Lanka. (Compl. ¶¶ 50, 86 ("Warnakulasooriya was then involved in two lawsuits brought by Laksala's affiliate, Boom Lanka Coco Products (PVT) LTD, Case Nos. DMR/2420/22 and B 670/2022 (the 'BL Coco Products Litigations').") ("Specifically, Scanwell Colombo Vice President Yajeewa Roshan contacted his father-in-law, Sri Lankan Minister Paltha Range Bandara, to threaten and exert pressure on Warnakulasooriya.")). The public interest factors

also favor dismissal.  Importantly, Plaintiff Warnakulasooriya's causes of action hinge on the appropriateness or lawfulness of three other legal actions all brought in Sri Lanka. Therefore, Plaintiff Warnakulasooriya is asking this Court to determine whether legal actions were appropriately brought under Sri Lankan law.  A court in Sri Lanka would undoubtedly be the best forum to determine the appropriateness or lawfulness of actions brought under Sri Lankan law. Finally, there is no indication that Plaintiff Warnakulasooriya cannot bring her specific claims against Scanwell Colombo in Sri Lanka without undue inconvenience or prejudice as she has stated that all travel bans have been lifted with Sri Lanka at this time.  (Compl. ⁋ 52).

In conclusion, the more appropriate and convenient jurisdiction available to the Plaintiff Warnakulasooriya is Sri Lanka, where all of the alleged wrongs and/or breaches were committed and where witnesses to the alleged wrongful litigation and other action reside. Therefore, in the event the Court finds that it has personal jurisdiction over Scanwell Colombo, Scanwell Colombo respectfully requests that the Court decline to exercise that jurisdiction and dismiss Plaintiff Warnakulasooriya's causes of action pursuant to the doctrine of *forum non conveniens*.

## **CONCLUSION**

For the foregoing reasons, Defendant Scanwell Colombo respectfully requests that this Court grant its Motion to Dismiss.

## **CERTIFICATION**

The undersigned certifies that they have conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this Motion, but Plaintiffs are opposed to the relief requested herein. Counsel for Co-Defendant Alpha Brokers Corporation has indicated that he agrees with Motion.

This the 12th day of November, 2024.          Respectfully submitted,

_/s/  Todd C. Rubenstein_
Todd C. Rubenstein, Esq.
Florida Bar No. 1016639
TAYLOR NELSON PL
20 3rd Street SW, Suite 209
Winter Haven, FL 33880
(863) 875-6950 (tel)
trubenstein@taylorlawpl.com
efiling@taylorlawpl.com
krieck@taylorlawpl.com

C. Fredric Marcinak, Esq.
Admitted Pro Hac Vice
MOSELEY MARCINAK LAW GROUP LLP
P.O. Box 26148
Greenville, S.C. 29616
(864) 248-6027 (tel)
fred.marcinak@momarlaw.com
Hannah.bridges@momarlaw.com

_Counsel for Defendant_
_Scanwell Logistics Colombo (Pvt), Ltd._

21

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing upon all parties to this matter by e-filing the same with the Court's CM-ECF system, which shall notify all parties of record.

This the 12th day of November 2024.

*/s/  Todd C. Rubenstein*
Todd C. Rubenstein, Esq.