# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BOOM LANKA BATHIK & GIFTS, LLC, and SURDARMA WARNAKULASOORIYA, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>)<br>SCANWELL LOGISTICS (MIA), INC.; SCANWELL LOGISTICS COLOMBO (PVT) LTD; and ALPHA BROKERS CORPORATION. )<br>)<br>)<br>)<br>)<br>Defendants. ) | C.A. No.: 1:24-cv-23151<br><br>DECLARATION OF<br>YAJEEWA ROSHAN |

1. My name is Yajeewa Roshan and I am the Vice President for Business Development of Scanwell Logistics Colombo (PVT), LTD ("Scanwell Colombo").

2. I have personal knowledge of the matters set forth herein or they have been made known to me by an investigation of corporate business records.

3. I have knowledge of the systems and procedures in place at Scanwell Colombo to receive, investigate, and resolve freight claims, including but not limited to records-keeping related to the receipt of any freight claim submitted to Scanwell Colombo.

4. I have knowledge of Scanwell Colombo's operations, standard practices, locations, and customer base or such knowledge has been made known to me through an investigation of Scanwell Colombo's corporate business records.

5. Scanwell Colombo is a Sri Lankan company formed and existing under the laws of Sri Lanka.

5344862.1

6. Scanwell Colombo's principal place of business is in Colombo, Sri Lanka.

7. Scanwell Colombo's registered agent resides in Colombo, Sri Lanka.

8. All of Scanwell Colombo's employees reside in Sri Lanka.

9. Scanwell Colombo does not conduct business in the United States.

10. Scanwell Colombo is the Sri Lankan agent for Scanwell Container Line, Ltd.

11. As the Sri Lankan agent for Scanwell Container Line, Ltd., Scanwell Colombo books ocean transportation of cargo for its customers where the transportation originates in Sri Lanka.

12. There are many different agents of Scanwell Container Line, Ltd. throughout the world.

13. The booking of transportation of freight originating in a specific country is conducted by the relevant agent of Scanwell Container Line, Ltd. in that agent's country.

14. I have knowledge of the shipment that is the subject of the above-captioned lawsuit against Scanwell Colombo or such knowledge has been made known to me through an investigation of Scanwell Colombo's corporate business records (hereinafter "the subject shipment").

15. I have knowledge of the communications between employees of Boom Lanka Bathik & Gifts, LLC, and/or Surdarma Warnakulasooriya (hereinafter "Plaintiffs") and Scanwell Colombo prior to the ocean transportation of the subject shipment.

16. I have knowledge of and am familiar with the bill of lading used for the subject shipment, which is the Scanwell Container Line, Ltd. International Bill of Lading attached hereto as **Exhibit A**.

17. Aside from the specific party information printed on the face of the bill of lading, the Scanwell Container Line, Ltd. International Bill of Lading attached hereto as **Exhibit A** is the

2

standard International Bill of Lading issued by Scanwell Container Line, Ltd. for all of Scanwell Container Line, Ltd.'s shipments.

18. The reverse side (third page of Exhibit A) of the Scanwell Container Line, Ltd. International Bill of Lading attached hereto as Exhibit A is the standard reverse side of the International Bill of Lading issued by Scanwell Container Line, Ltd. for all of Scanwell Container Line, Ltd.'s shipments.

19. Prior to the subject shipment, Scanwell Colombo sent Plaintiffs a price quote for the transportation of Plaintiffs' goods (the "Laksala Goods") from Sri Lanka to Miami, Florida on October 21, 2021 via email which is attached hereto as **Exhibit B**.

20. During initial loading of the Laksala Goods in the 20' container, Plaintiffs were informed that the Laksala Goods all could not fit in the 20' container prior to ocean transportation.

21. Accordingly, on November 27, 2021, Scanwell Colombo sent Plaintiffs a revised quote via email for a 40' container in order to fit all of the Laksala Goods on one container, with the specific container number in the email, such email is attached hereto as **Exhibit C**.

22. Prior to the ocean transportation of the Laksala Goods from Sri Lanka to Miami, Florida, Scanwell Colombo also sent via email to Plaintiffs a copy of the bill of lading, such email is attached hereto as **Exhibit D**.

23. For the subject shipment, Scanwell Colombo booked the subject shipment at origin in Sri Lanka, as the agent of Scanwell Container Line, Ltd. in Sri Lanka.

24. Once Scanwell Colombo booked the subject shipment with Scanwell Container Line, Ltd. Scanwell Colombo's services for the subject shipment ended.

25. Any services to be performed in the United States for the subject shipment were to be conducted by the appropriate Scanwell Container Line, Ltd. agent in the United States.

26. For the subject shipment, the agent in the United States for Scanwell Container Line, Ltd. was Scanwell Logistics (MIA), Inc.

27. All services for the subject shipment to be performed in the United States were the responsibility of Scanwell Logistics (MIA), Inc.

28. Scanwell Colombo did not perform any services for the subject shipment in the United States.

29. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This the 8 day of November, 2024.

_____
YAJEEWA ROSHAN

# EXHIBIT A

# SCANWELL CONTAINER LINE LTD.
as the Carrier

**INTERNATIONAL BILL OF LADING**
NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER

| SHIPPER | BOOKING NO. | MBL No.: CMDUCB00238561 |
|---|---|---|
| SRI LANKA HANDICRAFTS BOARD<br>60 LAKSALA BLDG YORK ST COL 01<br>TSO-T.VAT<br>DDC RMU ORDER | EXPORT REFERENCES | |

| CONSIGNEE | FORWARDING AGENT-REFERENCES |
|---|---|
| BOOM LANKA BATIK & GIFTS<br>2823 DRIVE MESQUITE<br>MESQUITE 75150 TEXAS<br>USA | POINT AND COUNTRY OF ORIGIN |

| NOTIFY PARTY | DOMESTIC ROUTING/EXPORT INSTRUCTIONS |
|---|---|
| BOOM LANKA BATIK & GIFTS<br>2823 DRIVE MESQUITE<br>MESQUITE 75150 TEXAS<br>USA | |

| | PLACE OF INITIAL RECEIPT* | DELIVERY AGENT |
|---|---|---|
| VESSEL-VOYAGE NO.<br>CMA CGM ALEXANDER VON HUMBOLDT V.0TULLS1MA. | PORT OF LOADING<br>COLOMBO, SRI LANKA | SCANWELL LOGISTICS (MIA) INC.<br>7765 NW 48 ST., SUITE 260,<br>MIAMI, FL 33166, UNITED STATES<br>Tel:+1-305-447-1328 Fax:+1-305-447-1103 |
| PORT OF DISCHARGE<br>SAVANNAH, GA, US | PLACE OF DELIVERY<br>MIAMI, FL, US | |

THE BELOW PARTICULARS OF THE GOODS ARE FURNISHED BY SHIPPER, AND ARE UNKNOWN TO THE CARRIER

| MARKS AND NUMBERS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| APHU7095730 /P5417874<br><br>DETAIL AS PER<br>ATTACHED LIST | /40' HQ /291CARTON(S) /5,670.000 KGS /50.000 CBM / CY/CY<br><br>291<br>CARTON(S) | SHIPPER'S LOAD, COUNT AND SEALED.<br>SAID TO CONTAIN:<br>DETAIL AS PER ATTACHED LIST<br><br>TOTAL: TWO HUNDRED NINETY ONE (291) CARTON(S) ONLY. | 5,670.000-KGS<br><br>FREIGHT | 50.000-CBM<br><br>PREPAID |

**NOTICE:** For Carriage to or from the United States of America, Clause 2.4 on the reverse side of this Bill of Lading may limit the Carrier's liability to a maximum of U.S.$500 per package or customary freight unit by virtue or incorporation of the U.S. Carriage of Goods by Sea Act, 46 U.S.C. §30701, unless the Merchant declares a higher cargo value below and pays the Carrier's ad valorem freight charge as per Clause 16.

**Declared Cargo Value US$** _____. **If Merchant enters a value, Carrier's limitation of liability shall not apply and the ad valorem rate will be charged.**

Received from the aforementioned shipper, the goods as described by the shipper in apparent external good order and condition unless otherwise indicated herein or heron to be transported in accordance with all the terms printed, written, typed or stamped in or on the front and back pages of this B/L to which the merchant agrees by accepting this B/L, and local privileges or customs notwithstanding.

| FREIGHT PAYABLE AT | COLOMBO, SRI LANKA | | X | If this box is checked. It means goods have been loaded, stowed and counted by Shipper. Carrier has NOT done so and is not responsible for accuracy of the piece count and the cargo condition or nature of goods described above. |
|---|---|---|---|---|
| | PREPAID | COLLECT | | |
| PROFIT SHARE | | USD144.60 | | The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back pages of this Bill of Lading |
| | | | | One (1) original B/L must be surrendered duly endorsed in exchange for the goods or a delivery order. In witness whereof three (3) original B/L have been signed, and if one (1) original B/L is accomplished for the delivery of the goods, issuance of a delivery order or for some other means, the others shall be void. |
| | | | DATED AT<br>06-Dec-2021 | |
| | TOTAL | USD144.60 | DATED | BY |
| | | | B/L No.<br>CMBSAC000041 | |
| * APPLICABLE ONLY WHEN USED FOR THROUGH TRANSPORTATION OR MULTIMODAL BILL OF LADING | | | Stamp/Signature of the Carrier or its agent | |
| SEE REVERSE SIDE FOR LIABILITY AND RESPONSIBILITY | | | LADEN ON BOARD 06-Dec-2021<br>ON | |

The contract evidenced by this Bill of Lading is governed by the laws of the Hong Kong Special Administrative Region. Any claim or dispute must be determined exclusively by the courts in the Hong Kong Special Administrative Region and no other court.

*(TELEX RELEASE watermark across document)*

*Stanwell Logistics Colombo (PVT) Ltd.*

No.67/1, Hudson Road, Colombo 3, Sri Lanka
Tel.: +94-11-242-6600  Fax: +94-11-242-6602

# ATTACH LIST

**House B/L#: CMBSAC000041**

Page 1 of 1

APHU7095730 /P5417874 /40' HQ /291CARTON(S) /5,670.000 KGS /50.000 CBM /    CY/CY

```
                SHIPPER'S LOAD, COUNT AND SEALED.
                SAID TO CONTAIN:
                "THIS SHIPMENT CONTAINS NO SOLID WOOD PACKING MATERIALS."

        291     1X40'HC CONTAINER STC:                       5,670.000-KGS        50.000-CBM
     CARTON(S)
                291 CARTONS OF                                        FREIGHT PREPAID

                WOODEN HANDICRAFTS
                COCONUT HANDICRAFTS
                GARMENTS
                DISPLAY RACKS
                WALL HANGERS
                CERAMIC ITEMS
                KITCHEN WARE

                Details as per the Invoice & Packing List

                HS CODE: 44219941, 23065020,09024091, 73269090,
                63049100, 69149090, 42022900,33074100,
                48021000,69149090,

                TOTAL: TWO HUNDRED NINETY ONE (291) CARTON(S) ONLY.
```

1. In this Bill of Lading, the following words have the following meanings:
   "Carrier" means SCANWELL CONTAINER LINE LTD.
   "COGSA" means the Carriage of Goods by Sea Act of the United States of America approved on 16 April 1936.
   "Merchant" means the shipper, the consignee, and the lawful holder of this Bill of Lading.
   "goods" includes goods, cargoes, wares, merchandise, and articles of every kind whatsoever (including articles of transport not supplied by or on behalf of the Carrier).
   "Dangerous Goods" means the goods which are of dangerous, explosive, inflammable, radioactive and/or damaging nature.
   "Hague Rules" means the International Convention for the Unification of certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924.
   "Hague-Visby Rules" means the Hague Rules as amended by the Protocol signed at Brussels on 23 February 1968.
   "Services" means any services of the Carrier provided for the Merchant e.g. carriage of goods by sea, inland waterway, land, road, rail and/or air; and/or storage, labelling, loading, unloading, packing, unpacking, consolidation, de-consolidation, collection, delivery and/or other handling of goods.
   "SDR" means Special Drawing Rights as defined by the International Monetary Fund.

2.1. If at any time one or more of the terms of this Bill of Lading becomes invalid or illegal, the validity or legality of the remaining terms of this Bill of Lading shall not in any way be affected.
2.2. The Carrier shall be entitled to all the rights, immunities, exceptions and limitations conferred on the carrier or the owner of the vessel by any applicable law or legislation.
2.3. Notwithstanding any other terms to the contrary in this Bill of Lading, in the event that the owner and/or the charterer of the vessel are held by any court worldwide to be entitled to limit their liability (for any loss of and/or damage to the goods) to an amount based on any international tonnage limitation conventions or the similar national tonnage limitation laws, the Carrier's liability for the loss of and/or damage to the goods shall be limited to the same amount as aforesaid. The international tonnage limitation conventions include the Convention on Limitation of Liability for Maritime Claims 1976, and its 1996 Protocol. The similar national tonnage limitation laws include the Maritime Code of the People's Republic of China.
2.4. Carriage of goods by sea or inland waterway covers the period from the time when the goods are loaded on to the time they are discharged from the vessel. The loading takes place either when the goods pass the vessel's rail or are on board the vessel or when the vessel's tackle is attached to the goods for taking them on board. The discharge ends either when the goods pass the vessel's rail and are off the vessel or when the vessel's tackle is removed from the goods deposited quayside. As far as carriage of goods by sea or inland waterway is concerned, the Carrier's liability shall be determined by the Hague Rules or any legislation (such as COGSA) making such Rules or the Hague-Visby Rules compulsorily applicable to this Bill of Lading, and the Hague Rules or the Hague-Visby Rules shall prevail in so far as they are inconsistent with any other terms of this Bill of Lading except Clause 2.3. The limitation amount in Article IV (5) of the Hague Rules is deemed to be the nominal value of 100 pounds sterling. Article IX of the Hague Rules is deemed to be deleted. The limitation amount according to COGSA is US$500 per package or customary freight unit, unless the nature and value of the goods have been declared by the shipper before shipment and inserted in this Bill of Lading.
2.5. Regarding the responsibility and liability of the Carrier for loss of or damage to, or in connection with, the custody and care and handling of the goods prior to the loading on the vessel and subsequent to the discharge from the vessel, such liability shall be determined by the terms of this Bill of Lading but not by the Hague Rules nor the Hague-Visby Rules.
2.6. The Services are subject to the terms of this Bill of Lading.
2.7. In this Bill of Lading, words importing the singular include the plural and vice versa; words importing a gender include every gender.
2.8. Wherever it is provided in this Bill of Lading that notice shall be dispatched by the Carrier to the Merchant, such notice shall be deemed as having been dispatched if (i) the Carrier does not know the address, e-mail address or fax number of the Merchant or (ii) the notice cannot reach the Merchant through its address, e-mail address or fax number last known to the Carrier.
2.9. The Merchant's liability under this Bill of Lading shall be joint and several.
3.1. This Bill of Lading, if consigned to order, is negotiable and constitutes title to the goods. The holder, by endorsement of this Bill of Lading, is entitled to receive or transfer the goods.
3.2. This Bill of Lading, if consigned to a named consignee, is not negotiable.
3.3. This Bill of Lading is prima facie evidence of receipt of the goods by the Carrier. However, proof to the contrary is not admissible when this Bill of Lading has been transferred to a third party acting in good faith.
4. The Merchant warrants that:
   a. all the goods have been properly and sufficiently packed, labelled and/or marked, and
   b. the goods are fit and suitable for the carriage, storage and/or any other handling, and
   c. the Merchant shall fully comply with the applicable laws and/or regulations of ports, Customs, and other authorities.
5.1. The Merchant shall indemnify the Carrier against all claims, liability, losses, damage, costs and/or expenses (including loss of and damage to any container and/or vessel) arising from or in connection with (i) the Carrier acting in accordance with the Merchant's instructions, (ii) a breach of warranty and/or obligation on the part of the Merchant, (iii) the inaccurate and/or insufficient information provided by the Merchant, and/or (iv) the mistake, negligence or wilful default of the Merchant, its employee, agent or contractor.
5.2. The Merchant undertakes that no claim shall be made against any employee, agent or sub-contractor of the Carrier if such claim imposes upon them any liability in connection with any Services provided by the Carrier. If any such claim should nevertheless be made, the Merchant shall indemnify the Carrier against all consequences. Every such employee, agent and sub-contractor shall have the benefit of all the terms herein benefiting the Carrier as if such terms were expressly provided for his or its benefit. For these purposes, the Carrier contracts for itself and also as agent and trustee for each such employee, agent and sub-contractor.
5.3. The Merchant shall defend, indemnify and hold harmless the Carrier from and against all claims, costs and demands whatsoever and by whomsoever made or preferred in excess of the liability of the Carrier under the terms of this Bill of Lading, and such indemnity shall include all claims, costs and demands arising from the negligence or mistake of the Carrier and from the mistake, negligence, wilful default or deliberate wrongdoing of the Carrier's employee, agent or sub-contractor.
5.4. The Merchant shall defend, indemnify and hold harmless the Carrier in respect of any General Average claim and any Salvage claim that may be made against the Carrier, and the Merchant shall provide such security as may be required by the Carrier. General Average shall be adjusted according to the York-Antwerp Rules 1974 or any amendment thereto or the York-Antwerp Rules 1994 or any modification thereof at the option of the Carrier. All goods shall be subject to a lien for General Average and/or Salvage security. If the Merchant fails to provide General Average and/or Salvage security acceptable to the Carrier within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier, the goods may be sold by public auction or private treaty or may be disposed of at the sole discretion of the Carrier at the expense of the Merchant, and the proceeds if any (net of the expenses in connection with such sale) shall be applied in satisfaction of General Average and/or Salvage contribution. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to provide General Average and/or Salvage security, such shall not affect the Carrier's aforesaid right to sell or dispose of the goods. The Merchant is responsible for payment of all costs and expenses (including but not limited to storage costs and demurrage charges) being incurred when the goods are being liened for General Average and/or Salvage security.
5.5. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which, the Carrier is not responsible, by Statute, contract or otherwise, the goods, Shipper, Consignee or owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or its agent, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shipper, Consignee or owners of the goods to the Carrier before delivery.
5.6. If the vessel carrying the goods (the carrying vessel) collides with any other vessel (the non-carrying vessel) as a result of the negligence of both the vessels, the Merchant undertakes to defend, indemnify and hold harmless the Carrier against any liability to any other party in so far as such liability relates to any claim whatsoever made against the non-carrying vessel by the Merchant.
6. Except under special arrangements previously made in writing, the Merchant warrants that the goods are not Dangerous Goods, nor are goods of comparable hazard, nor are goods otherwise likely to cause damage. The goods that are likely to cause damage include the goods that are likely to encourage vermin, and the goods that are likely to encourage other pests. Should the Merchant nevertheless deliver any such goods to the Carrier or cause the Carrier to handle any such goods otherwise than under special arrangements previously made in writing, then whether or not the Carrier is aware of the nature of such goods, the Merchant shall be liable for all expenses, losses and/or damage whatsoever caused by or to or in connection with such goods and howsoever arising, and shall indemnify the Carrier against all penalties, claims, damages, costs, expenses and/or liability whatsoever arising from or in connection with such goods, and such goods may be destroyed or otherwise dealt with at the risk and expenses of the Merchant at the sole discretion of and without any liability to the Carrier. If such goods are handled by the Carrier under arrangements previously made in writing, they may nevertheless be destroyed at the risk and expenses of the Merchant at the sole discretion of and without any liability to the Carrier on account of risk to other goods, property, life or health.

7. Except under special arrangements previously made in writing, the Carrier will not deal with bullion, bank notes, coins, cheques, bonds, negotiable documents and securities, precious stones, precious metal objects, jewellery, watches, antiques, valuables, livestock, live animals or pets. Should the Merchant nevertheless deliver any such goods to the Carrier or cause the Carrier to handle any such goods otherwise than under special arrangements previously made in writing, the Carrier shall be under no liability whatsoever and howsoever arising in connection with such goods and notwithstanding that the value of any such goods may be shown, declared or indicated on any documents accompanying such goods.
8.1. If delivery of the goods is not taken by the Merchant at the time and place when and where delivery should be taken, the Carrier shall be entitled (but is not obliged) to store the goods at the sole risk of the Merchant, whereupon any liability which the Carrier may have in respect of the goods stored shall wholly cease and the cost of such storage shall be paid by the Merchant to the Carrier.
8.2. The Carrier is entitled (but not obliged) to sell the goods by public auction or private treaty or to dispose of the goods at the Carrier's sole discretion if delivery of the goods is not taken by the Merchant within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to take delivery of the goods, such shall not affect the Carrier's aforesaid right to sell or dispose of the uncollected goods. The Merchant shall pay all costs and expenses (including storage costs) incurred in connection with the storage and the sale or disposal of the goods.
8.3. All goods and documents relating to such goods shall be subject to (i) particular lien for monies due in respect of such goods, and (ii) general lien for any other monies (not relating to such goods) due from the Merchant to the Carrier. If any such monies due to the Carrier are not paid within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier, the goods may be sold by public auction or private treaty or may be disposed of at the sole discretion of the Carrier at the expense of the Merchant, and the proceeds if any (net of the expenses in connection with such sale) shall be applied in satisfaction of such debts, and the Carrier shall not be liable for any reduction in value received on the sale of the goods, nor shall the Merchant be relieved from the liability of any outstanding debts merely because the goods have been sold or disposed of. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to pay the outstanding monies, such shall not affect the Carrier's aforesaid right to sell or dispose of the goods. The Merchant is responsible for payment of all costs and expenses (including storage costs) being incurred when the goods are being liened.
9.1. Charges for the Services shall be deemed fully earned and non-returnable upon receipt of the goods by the Carrier. The Merchant shall pay to the Carrier all sums immediately when due without deduction on account of any claim, counterclaim or set-off. Except under other special arrangement agreed by the Carrier in writing, payment to the Carrier is due as soon as an invoice is rendered to the Merchant. For any amount unpaid within 30 days from the due date, the Carrier shall be entitled to interest from the date of the invoice until payment at 2% per month.
9.2. If the shipment is on the freight collect basis but the consignee does not take delivery of the goods within 14 days from the date of the goods' arrival at the port of discharge or place of delivery, the shipper shall be responsible for payment of all the outstanding freight charges, and costs and expenses (including but not limited to storage costs and demurrage charges) incurred until the goods are duly delivered or are sold or disposed of as per Clauses 8.2 and/or 8.3.
10.1. The Carrier shall be entitled to sub-contract on any terms to any agents and/or sub-contractors the whole or any part of the Services whatsoever undertaken by the Carrier.
10.2. The Carrier reserves to itself absolute discretion as to the means, the manner, the routes and the procedures to be followed in the performance of the Services including the carriage, the transhipment, the storage and the other handling of the goods. The Carrier has liberty to use any means, routes and procedures, including using any vessel whether or not named on the front page of this Bill of Lading and stowing the goods on or under deck. Anything done in accordance with the aforesaid discretion and/or liberty shall not be a deviation of whatsoever nature or degree.
11. If there is any loss, damage, deterioration, delay, non-compliance or miscompliance of instructions, non-delivery, misdelivery (other than the one described in Clause 12), unauthorised delivery or misdirection of or to or in connection with the goods that arises from the negligence or mistake of the Carrier or that arises from the negligence, mistake, wilful default or deliberate wrongdoing of the Carrier's employee, agent or sub-contractor, the Carrier shall be liable for any claim relating to the aforesaid incident. However, the Carrier's aforesaid liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods in respect of which a claim arises.
12. If there is any misdelivery of goods without presentation of this Bill of Lading negligently or deliberately done by the Carrier's employee, agent or sub-contractor that has no prior approval of the Carrier, the Carrier shall be liable for any claim relating to the aforesaid misdelivery of goods. However, the Carrier's aforesaid liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods misdelivered.
13. Notwithstanding any other terms to the contrary in this Bill of Lading but subject to Clauses 2.3 and 2.4, the Carrier shall not be liable for any claim relating to:
   a. any delay, goods shut out or off loaded, goods' departure or arrival time; or
   b. any special, incidental, indirect, consequential or economic loss (including loss of market, loss of profit, loss of tax, loss of tax return, loss of revenue, loss of business or loss of goodwill); or
   c. any loss, damage, expense or cost arising from or in connection with fire, flood, storm, typhoon, explosion, deviation, port congestion, strike, lock out, stoppage or restraint of labour; or
   d. any loss of or damage to the goods which are stated on the front page of this Bill of Lading to be carried on deck and which are so carried
regardless of whether or not the aforesaid incident arises from the negligence or mistake of the Carrier or from the negligence, mistake, wilful default or deliberate wrongdoing of the Carrier's employee, agent or sub-contractor. However, if the Carrier is still legally held liable for the aforesaid claim despite the aforesaid provision, the Carrier's liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods in respect of which the claim arises.
14. If there is any claim that the Carrier is legally held liable and there are no other terms in this Bill of Lading suited to that claim for limiting the Carrier's liability, the Carrier's aforesaid liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods in respect of which the claim arises.
15. The liability accepted by the Carrier under Clauses 11, 12, 13 and 14 shall be subject to a further limit of 200,000 SDR per event i.e. the Carrier's aforesaid liability accepted under Clauses 11, 12, 13 and 14 shall not in any circumstances whatsoever exceed 200,000 SDR per event or events arising from a common cause.
16. The Carrier may accept liability in excess of the limits set out in Clauses 2.3, 2.4, 11, 12, 13, 14 and 15 provided that (i) the value of the goods is declared in writing by the shipper and accepted by the Carrier in writing and (ii) the Merchant pays to the Carrier the additional charges as decided by the Carrier. Details of the additional charges will be provided upon written request by the shipper. The declared value accepted shall be the Carrier's limit of liability and shall replace the limits in Clauses 2.3, 2.4, 11, 12, 13, 14 and 15.
17. Any Services provided by the Carrier gratuitously are provided on the basis that the Carrier will not accept any liability whatsoever and howsoever arising.
18. Any superficial rust, oxidation, discoloration, or any like condition due to moisture is not a condition of damage but is inherent to the nature of the goods, and acknowledgement of receipt of the goods by the Carrier in apparent good order and condition is not a representation that such rust, oxidation, discoloration, or the like condition due to moisture did not exist on receipt.
19. If the Services are or are likely to be affected by any risk, delay, hindrance, difficulty and/or disadvantage of any kind whatsoever, whensoever and howsoever arising (including port congestion, strike, lock out, stoppage, restraint of labour, and the Merchant's failure to pay the Services charges that are outstanding for 2 months or more), the Carrier may terminate and/or abandon the Services and place the goods at any place for the Merchant to take delivery of the goods, whereupon the Carrier's liability and responsibility in respect of the goods shall cease. If the Merchant does not take delivery of the goods within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier, the Carrier is entitled (but not obliged) to sell the goods by public auction or private treaty or to dispose of the goods at the Carrier's sole discretion at the expense of the Merchant. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to take delivery of the goods, such shall not affect the Carrier's aforesaid right to sell or dispose of the goods. The Merchant is responsible for payment of all the outstanding Services charges, and costs and expenses (including storage costs) incurred until the goods are taken delivery, disposed of or sold.
20. Any claim notice against the Carrier must be in writing and delivered to the Carrier within 14 days from the date of delivery of the goods or the date the goods should have been delivered or the date the Merchant first knows about the event that may give rise to the claim, whichever is the earliest. If the Merchant fails to deliver the aforesaid written claim notice to the Carrier and thereby prejudices the Carrier's position in the claim, the Carrier shall in any event be discharged of all liability whatsoever and howsoever arising in respect of the claim.
21. The Carrier shall in any event be discharged of all liability whatsoever and howsoever arising in respect of the Services, unless suit is brought against the Carrier in the court of the Hong Kong Special Administrative Region within nine months from the date of delivery of the goods or the date the goods should have been delivered or the date of the event giving rise to the claim, whichever is the earliest.
22. The defences, exemptions and limitations of liability provided for in this Bill of Lading shall apply in any action against the Carrier whether such action is founded in contract or in tort. Moreover, the Carrier shall not be liable for any claims of whatsoever nature except those claims for which the Carrier has specified its accepting liability under Clauses 2.3, 2.4, 11, 12, 13, 14, 15 and 16.
23. The contract evidenced by this Bill of Lading is governed by the law of the Hong Kong Special Administrative Region. Any claim or dispute must be determined exclusively by the courts in the Hong Kong Special Administrative Region and no other court.

# EXHIBIT B

| | |
|---|---|
| **From:** | CMB-YAJEEWA ROSHAN |
| **To:** | Director Sales |
| **Cc:** | info@laksala.gov.lk; Kelum Jayawardhana; CMB-PRIYAN SEILMAN; CMB-HARRY JOACHIM |
| **Subject:** | RE: Exhibition cargo / Laksala - Sri Lanka Handicrafts Board |
| **Attachments:** | image001.png |
| **Importance:** | High |

Hello Mr.Kelum,

It was nice to meeting you that day in your office and thank for your time extended us.  As discussed, Please find below total cost from Colombo to Miami, FL for a 20' GP container based on Door to Port.

Total cost is  USD 12750 per container.

Above rate is inclusive of

Freight Charges -  From Colombo to Miami -  20' GP
Packing charges –  ( required  Paper wrap , Bubble wrap, sponge wrap , shrink wrap ,  regiform sheets , corrugated boxes ,  Strapping , wooden boxes and Palletize )
Transport Charges
Loading charges – Manpower and forklift charges
Approvals – Forest department / Archaeological department
Customs clearance
Port Charges
Handling Charges
Documentation charges
Agency fee.

We  required 7 Working days for Packing and documentation.

Required documents.

Commercial Invoice
Packing list
Required letter to obtain approvals from Forest and Archeological Dep.

First Available vessel is on 6th Nov 2021.
Vessel – CMA CGM LINCOLINE
ETA CMB – 6TH NOV
Transit time 37 Days.

Kindly contact us if any further clarifications.

*Best Regards,*
*Yajeewa Witharanage./ Vice President - BD*


*Scanwell Logistics Colombo (Pvt) Ltd.*
Mobile: +94 712221243 ( CMB )
Mobile  : +86 13823657430 (CN)
Mobile: +852 69347430 ( HKG )
Email.yajeewaroshan@scanwell.com
www.scanwell.com

*All transactions are subject to the Company's Standard Trading Conditions (copy is available upon request), which in certain circumstances limit or exempt the Company's liability.*

 please don't print this e-mail unless you really need to.

**From:** Director Sales <directorsales@laksala.gov.lk>
**Sent:** Tuesday, October 19, 2021 11:25 AM
**To:** CMB-YAJEEWA ROSHAN <YajeewaRoshan@scanwell.com>
**Cc:** info@laksala.gov.lk; Kelum Jayawardhana <kelumcj@gmail.com>
**Subject:** Test

Dear Yajeew,

TEST MAIL

Thank You,
**Best Regards,**

**W.C.Kelum Jayawardhana**
**Director – Sales**
**LAKSALA**
**Sri Lanka Handicrafts Board ,**
No. 215, Bauddhaloka Mawatha,
Colombo 07, Sri Lanka
Tel.    - (+94) 112 597 797 - +94 779 712 198
E-mail -directorsales@laksala.gov.lk
Web    - www.laksala.gov.lk

# EXHIBIT C

**Lesesne Phillips**

| | |
|---|---|
| **From:** | CMB-YAJEEWA ROSHAN <YajeewaRoshan@scanwell.com> |
| **Sent:** | Saturday, November 27, 2021 3:29 AM |
| **To:** | dotdigitalsl@gmail.com |
| **Cc:** | CMB-PRIYAN SEILMAN; CMB-MAHESH PRIYANKARA; CMB-HARRY JOACHIM; CMB-DANANJAYA DEWAPPRIYA; CMB-GRAHAM JOACHIM |
| **Subject:** | RE : Exhibition cargo / Laksala - Sri Lanka Handicrafts Board |
| **Importance:** | High |

Dear Ms. Nilu  /  Manjula,

Please find below  revised  cost from Colombo to Miami, FL for a 40' HQ  container based on Door to Port.

**Total cost is  USD 18650 per container.**

Above rate is inclusive of ,

Freight Charges -  From Colombo to Miami -  40' HC.
Packing charges –  ( required  Paper wrap , Bubble wrap, sponge wrap , shrink wrap ,  regiform sheets , corrugated boxes ,  Strapping , wooden boxes and Palletize ).
Transport Charges.
Loading charges – Manpower .
Approvals – Forest department / Archaeological department  / Coconut board /  Tea Board / Textile Ministry .
Customs clearance .
Port Charges.
Handling Charges .
Documentation charges
Yard Charges .
Agency fee.

Destination Clearance and Delivery charges  -   USD 2500 per 40' HC. –  We will advice destination duty and taxes separately once shipment arrive to destination and  as per US customs  tariff .

**Vessel Details**
Vessel – CMA CGM ALEXANDER VON HUMBOLDT V.0TULLS1MA
ETA CMB – 30TH NOV
Transit time 37 Days.

Container #  - **APHU7095730 / 40' HC**

**Please advise US bond Reference No  in order to file AMS and ISF**

Kindly contact us if any further clarifications.

1

**Best Regards,**
**Yajeewa Witharanage./ Vice President - BD**

 *Scanwell Logistics Colombo (Pvt) Ltd.*
*Mobile: +94 712221243 ( CMB )*
*Mobile   : +86 13823657430 (CN)*
*Mobile: +852 69347430 ( HKG )*
*Email.yajeewaroshan@scanwell.com*
*www.scanwell.com*

All transactions are subject to the Company's Standard Trading Conditions (copy is available upon request), which in certain circumstances limit or exempt the Company's liability.

please don't print this e-mail unless you really need to.

# EXHIBIT D

| | |
|---|---|
| From: | CMB-YAJEEWA ROSHAN |
| To: | dotdigitalsl@gmail.com |
| Cc: | CMB-MAHESH PRIYANKARA; CMB-GRAHAM JOACHIM |
| Subject: | FW: RE: LAKSALA ISF |
| Attachments: | image001.png<br>CMBSAC000041.pdf |

Dear Manjula,

Please find attached B/L copy for your ref. Kindly check and confirmed.

Best Regards,
Yajeewa.

**From:** CMB-MAHESH PRIYANKARA <MaheshPriyankara@scanwell.com>
**Sent:** Thursday, December 2, 2021 2:17 PM
**To:** CMB-YAJEEWA ROSHAN <YajeewaRoshan@scanwell.com>
**Cc:** CMB-GRAHAM JOACHIM <GrahamJoachim@scanwell.com>; CMB-DANANJAYA DEWAPPRIYA <DananjayaDewappriya@scanwell.com>
**Subject:** RE: RE: LAKSALA ISF

Hi Mr. Yajeewa,

Pls find attached BL draft FYR.

*Cheers!*
*Mahesh* ✍

 *Scanwell Logistics Colombo (Pvt) Ltd.* 
67/1 Hudson Road Colombo 3 Sri Lanka.
Office #+94112426600/4766400 – Ext#533
Mobile #+94701711562
Email. maheshpriyankara@scanwell.com
www.scanwell.com

All transactions are subject to the Company's Standard Trading Conditions (copy is available upon request), which in certain circumstances limit or exempt the Company's liability.

 please don't print this e-mail unless you really need to.

# SCANWELL CONTAINER LINE LTD.
### as the Carrier

**INTERNATIONAL BILL OF LADING**
NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER

| SHIPPER | BOOKING NO. 21CMBB002600 | MBL No.: CMDUCB00238561 |
|---|---|---|
| SRI LANKA HANDICRAFTS BOARD<br>60 LAKSALA BLDG YORK ST COL 01<br>TSO-T.VAT<br>DDC RMU ORDER | EXPORT REFERENCES | |

| CONSIGNEE | FORWARDING AGENT-REFERENCES |
|---|---|
| BOOM LANKA BATIK & GIFTS<br>2823 DRIVE MESQUITE<br>MESQUITE 75150 TEXAS<br>USA | POINT AND COUNTRY OF ORIGIN |

| NOTIFY PARTY | DOMESTIC ROUTING/EXPORT INSTRUCTIONS |
|---|---|
| BOOM LANKA BATIK & GIFTS<br>2823 DRIVE MESQUITE<br>MESQUITE 75150 TEXAS<br>USA | |

| | PLACE OF INITIAL RECEIPT* | DELIVERY AGENT |
|---|---|---|
| VESSEL-VOYAGE NO.<br>CMA CGM ALEXANDER VON HUMBOLDT V.0TULLS1MA. | PORT OF LOADING<br>COLOMBO, SRI LANKA | SCANWELL LOGISTICS (MIA) INC.<br>7765 NW 48 ST., SUITE 260,<br>MIAMI, FL 33166, UNITED STATES<br>Tel:+1-305-447-1328 Fax:+1-305-447-1103 |
| PORT OF DISCHARGE<br>SAVANNAH, GA, US | PLACE OF DELIVERY<br>MIAMI, FL, US | |

THE BELOW PARTICULARS OF THE GOODS ARE FURNISHED BY SHIPPER, AND ARE UNKNOWN TO THE CARRIER

| MARKS AND NUMBERS | NO. OF PKGS. | DESCRIPTION OF PACKAGES AND GOODS | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| APHU7095730 /P5417874 | | /40' HQ /291CARTON(S) /5,670.000 KGS /50.000 CBM /   CY/CY | | |
| DETAIL AS PER ATTACHED LIST | 291 CARTON(S) | SHIPPER'S LOAD, COUNT AND SEALED.<br>SAID TO CONTAIN:<br>DETAIL AS PER ATTACHED LIST<br><br>TOTAL: TWO HUNDRED NINETY ONE (291) CARTON(S) ONLY. | 5,670.000-KGS<br><br>FREIGHT PREPAID | 50.000-CBM |

**NOTICE:** For Carriage to or from the United States of America, Clause 2.4 on the reverse side of this Bill of Lading may limit the Carrier's liability to a maximum of U.S.$500 per package or customary freight unit by virtue or incorporation of the U.S. Carriage of Goods by Sea Act, 46 U.S.C. §30701, unless the Merchant declares a higher cargo value below and pays the Carrier's ad valorem freight charge as per Clause 16.

Declared Cargo Value US$ _____. If Merchant enters a value, Carrier's limitation of liability shall not apply and the ad valorem rate will be charged.

Received from the aforementioned shipper, the goods as described by the shipper in apparent external good order and condition unless otherwise indicated herein or heron to be transported in accordance with all the terms printed, written, typed or stamped in or on the front and back pages of this B/L to which the merchant agrees by accepting this B/L, and local privileges or customs nothwithstanding.

| FREIGHT PAYABLE AT | COLOMBO, SRI LANKA | | [X] If this box is checked. It means goods have been loaded, stowed and counted by Shipper. Carrier has NOT done so and is not responsible for accuracy of the piece count and the cargo condition or nature of goods described above. |
|---|---|---|---|
| | PREPAID | COLLECT | |
| FREIGHT AS ARRANGED | | | The receipt, custody, carriage and delivery of the goods are subject to the terms appearing on the face and back pages of this Bill of Lading<br><br>One (1) original B/L must be surrendered duly endorsed in exchange for the goods or a delivery order. In witness whereof three (3) original B/L have been signed, and if one (1) original B/L is accomplished for the delivery of the goods, issuance of a delivery order or for some other means, the others shall be void. |
| | | | DATED AT<br>03-Dec-2021           BY |
| | | | DATED<br>B/L No.  CMBSAC000041 |
| | TOTAL | | Stamp/Signature of the Carrier or its agent |
| * APPLICABLE ONLY WHEN USED FOR THROUGH TRANSPORTATION OR MULTIMODAL BILL OF LADING | | | LADEN ON BOARD   03-Dec-2021 |
| SEE REVERSE SIDE FOR LIABILITY AND RESPONSIBILITY | | | ON |

The contract evidenced by this Bill of Lading is governed by the laws of the Hong Kong Special Administrative Region. Any claim or dispute must be determined exclusively by the courts in the Hong Kong Special Administrative Region and no other court.

# Suntwell Logistics Colombo (Pvt) Ltd.

No.67/1, Hudson Road, Colombo 3, Sri Lanka
Tel.: +94-11-242-6600  Fax: +94-11-242-6602

## ATTACH LIST

**House B/L#: CMBSAC000041**

Page 1 of 1

APHU7095730 /P5417874 /40' HQ /291CARTON(S) /5,670.000 KGS /50.000 CBM /    CY/CY

```
                         SHIPPER'S LOAD, COUNT AND SEALED.
                         SAID TO CONTAIN:
                         "THIS SHIPMENT CONTAINS NO SOLID WOOD PACKING MATERIALS."

            291  1X40'HC CONTAINER STC:                         5,670.000-KGS        50.000-CBM
        CARTON(S)
                 291 CARTONS OF                                        FREIGHT PREPAID

                         WOODEN HANDICRAFTS
                         COCONUT HANDICRAFTS
                         GARMENTS
                         DISPLAY RACKS
                         WALL HANGERS
                         CERAMIC ITEMS
                         KITCHEN WARE

                         Details as per the Invoice & Packing List

                         HS CODE: 44219941, 23065020,09024091, 73269090,
                         63049100, 69149090, 42022900,33074100,
                         48021000,69149090,

                         TOTAL: TWO HUNDRED NINETY ONE (291) CARTON(S) ONLY.
```

1. In this Bill of Lading, the following words have the following meanings:
   "Carrier" means SCANWELL CONTAINER LINE LTD.
   "COGSA" means the Carriage of Goods by Sea Act of the United States of America enacted in 1936.
   "Merchant" means the shipper, the consignee, and the lawful holder of this Bill of Lading.
   "goods" includes goods, cargoes, wares, merchandise, and articles of every kind whatsoever (including articles of transport not supplied by or on behalf of the Carrier).
   "Dangerous Goods" means the goods which are of dangerous, explosive, inflammable, radioactive and/or damaging nature.
   "Hague Rules" means the International Convention for the Unification of certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924.
   "Hague-Visby Rules" means the Hague Rules as amended by the Protocol signed at Brussels on 23 February 1968.
   "Services" means any services of the Carrier provided for the Merchant e.g. carriage of goods by sea, inland waterway, land, road, rail and/or air; and/or storage, labelling, loading, unloading, packing, unpacking, consolidation, de-consolidation, collection, delivery and/or other handling of goods.
   "SDR" means Special Drawing Rights as defined by the International Monetary Fund.

2.1. If at any time one or more of the terms of this Bill of Lading becomes invalid or illegal, the validity or legality of the remaining terms of this Bill of Lading shall not in any way be affected.
2.2. The Carrier shall be entitled to all the rights, immunities, exceptions and limitations conferred on the carrier or the owner of the vessel by any applicable law or legislation.
2.3. Notwithstanding any other terms to the contrary in this Bill of Lading, in the event that the owner and/or the charterer of the vessel are held by any court worldwide to be entitled to limit their liability (for any loss of and/or damage to the goods) to an amount based on any international tonnage limitation conventions or the similar national tonnage limitation laws, the Carrier's liability for the loss of and/or damage to the goods shall be limited to the same amount as aforesaid. The international tonnage limitation conventions include the Convention on Limitation of Liability for Maritime Claims 1976, and its 1996 Protocol. The similar national tonnage limitation laws include the Maritime Code of the People's Republic of China.
2.4. Carriage of goods by sea or inland waterway covers the period from the time when the goods are loaded on to the time they are discharged from the vessel. The loading takes place either when the goods pass the vessel's rail and are on board the vessel or when the vessel's tackle is attached to the goods for taking them on board. The discharge ends either when the goods pass the vessel's rail and are off the vessel or when the vessel's tackle is removed from the goods deposited quayside. As far as carriage of goods by sea or inland waterway is concerned, the Carrier's liability shall be determined by the Hague Rules or any legislation (such as COGSA) making such Rules or the Hague-Visby Rules compulsorily applicable to this Bill of Lading, and the Hague Rules or the Hague-Visby Rules shall prevail in so far as they are inconsistent with any other terms of this Bill of Lading except Clause 2.3. The limitation amount in Article IV (5) of the Hague Rules is deemed to be the nominal value of 100 pounds sterling. Article IX of the Hague Rules is deemed to be deleted. The limitation amount according to COGSA is US$500 per package or customary freight unit, unless the nature and value of the goods have been declared by the shipper before shipment and inserted in this Bill of Lading.
2.5. Regarding the responsibility and liability of the Carrier for loss of or damage to, or in connection with the custody and care and handling of the goods prior to the loading on the vessel and subsequent to the discharge from the vessel, such shall be determined by the terms of this Bill of Lading but not by the Hague Rules nor the Hague-Visby Rules.
2.6. The Services are subject to the terms of this Bill of Lading.
2.7. In this Bill of Lading, words importing the singular include the plural and vice versa; words importing a gender include every gender.
2.8. Wherever it is provided in this Bill of Lading that notice shall be dispatched by the Carrier to the Merchant, such notice shall be deemed as having been dispatched if (i) the Carrier does not know the address, e-mail address or fax number of the Merchant or (ii) the notice cannot reach the Merchant through its address, e-mail address or fax number last known to the Carrier.
2.9. The Merchant's liability under this Bill of Lading shall be joint and several.
3.1. This Bill of Lading, if consigned to order, is negotiable and constitutes title to the goods. The holder, by endorsement of this Bill of Lading, is entitled to receive or transfer the goods.
3.2. This Bill of Lading, if consigned to a named consignee, is not negotiable.
3.3. This Bill of Lading is prima facie evidence of receipt of the goods by the Carrier. However, proof to the contrary is not admissible when this Bill of Lading has been transferred to a third party acting in good faith.
4. The Merchant warrants that:
   a. all the goods have been properly and sufficiently packed, labelled and/or marked, and
   b. the goods are fit and suitable for the carriage, storage and/or any other handling, and
   c. the Merchant shall fully comply with the applicable laws and/or regulations of ports, Customs, and other authorities.
5.1. The Merchant shall indemnify the Carrier against all claims, liability, losses, damage, costs and/or expenses (including loss of and damage to any container and/or vessel) arising from or in connection with (i) the Carrier acting in accordance with the Merchant's instructions, (ii) a breach of warranty and/or obligation on the part of the Merchant, (iii) the inaccurate and/or insufficient information provided by the Merchant, and/or (iv) the mistake, negligence or wilful default of the Merchant, its employee, agent or contractor.
5.2. The Merchant undertakes that no claim shall be made against any employee, agent or sub-contractor of the Carrier if such claim imposes upon them any liability in connection with any Services provided by the Carrier. If any such claim should nevertheless be made, the Merchant shall indemnify the Carrier against all consequences. Every such employee, agent and sub-contractor shall have the benefit of all the terms herein benefiting the Carrier as if such terms were expressly provided for his or its benefit. For these purposes, the Carrier contracts for itself and also as agent and trustee for each such employee, agent and sub-contractor.
5.3. The Merchant shall defend, indemnify and hold harmless the Carrier from and against all claims, costs and demands whatsoever and by whomsoever made or preferred in excess of the liability of the Carrier under the terms of this Bill of Lading, and such indemnity shall include all claims, costs and demands arising from the negligence or mistake of the Carrier and from the mistake, negligence, wilful default or deliberate wrongdoing of the Carrier's employee, agent or sub-contractor.
5.4. The Merchant shall defend, indemnify and hold harmless the Carrier in respect of any General Average claim and any Salvage claim that may be made against the Carrier, and the Merchant shall provide such security as may be required by the Carrier. General Average shall be adjusted according to the York-Antwerp Rules 1974 or any amendment thereto or the York-Antwerp Rules 1994 or any modification thereof at the option of the Carrier. All goods shall be subject to a lien for General Average and/or Salvage security. If the Merchant fails to provide General Average and/or Salvage security acceptable to the Carrier within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier, the goods may be sold by public auction or private treaty or may be disposed of at the sole discretion of the Carrier at the expense of the Merchant, and the proceeds if any (net of the expenses in connection with such sale) shall be applied in satisfaction of General Average and/or Salvage contribution. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to provide General Average and/or Salvage security, such shall not affect the Carrier's aforesaid right to sell or dispose of the goods. The Merchant is responsible for payment of all costs and expenses (including but not limited to storage costs and demurrage charges) being incurred when the goods are being liened for General Average and/or Salvage security.
5.5. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which, the Carrier is not responsible, by Statute, contract or otherwise, the goods, Shipper, Consignee or owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or its agent, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shipper, Consignee or owners of the goods to the Carrier before delivery.
5.6. If the vessel carrying the goods (the carrying vessel) collides with any other vessel (the non-carrying vessel) as a result of the negligence of both the vessels, the Merchant undertakes to defend, indemnify and hold harmless the Carrier against any liability to any other party in so far as such liability relates to any claim whatsoever made against the non-carrying vessel by the Merchant.
6. Except under special arrangements previously made in writing, the Merchant warrants that the goods are not Dangerous Goods, nor are goods of comparable hazard, nor are goods otherwise likely to cause damage. The goods that are likely to cause damage include the goods that are likely to encourage vermin, and the goods that are likely to encourage other pests. Should the Merchant nevertheless deliver any such goods to the Carrier or cause the Carrier to handle any such goods otherwise than under special arrangements previously made in writing, then whether or not the Carrier is aware of the nature of such goods, the Merchant shall be liable for all expenses, losses and/or damage whatsoever caused by or to or in connection with such goods and howsoever arising, and shall indemnify the Carrier against all penalties, claims, damages, costs, expenses and/or liability whatsoever arising from or in connection with such goods, and such goods may be destroyed or otherwise dealt with at the risk and expenses of the Merchant at the sole discretion of and without any liability to the Carrier. If such goods are handled by the Carrier under arrangements previously made in writing, they may nevertheless be destroyed at the risk and expenses of the Merchant at the sole discretion of and without any liability to the Carrier on account of risk to other goods, property, life or health.

7. Except under special arrangements previously made in writing, the Carrier will not deal with bullion, bank notes, coins, cheques, bonds, negotiable documents and securities, precious stones, precious metal, objects, jewellery, antiquities or other valuable goods of the like. Should the Merchant nevertheless deliver any such goods to the Carrier or cause the Carrier to handle any such goods otherwise than under special arrangements previously made in writing, the Carrier shall be under no liability whatsoever and howsoever arising in connection with such goods and notwithstanding that the value of any such goods may be shown, declared or indicated on any documents accompanying such goods.
8.1. If delivery of the goods is not taken by the Merchant at the time and place when and where delivery should be taken, the Carrier shall be entitled (but not obliged) to store the goods at the sole risk of the Merchant, whereupon any liability which the Carrier may have in respect of the goods stored shall wholly cease and the cost of such storage shall be paid by the Merchant to the Carrier.
8.2. The Carrier is entitled (but not obliged) to sell the goods by public auction or private treaty or to dispose of the goods at the Carrier's sole discretion if delivery of the goods is not taken by the Merchant within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to take delivery of the goods, such shall not affect the Carrier's aforesaid right to sell or dispose of the uncollected goods. The Merchant shall pay all costs and expenses (including storage costs) incurred in connection with the storage and the sale or disposal of the goods.
8.3. All goods and documents relating to such goods shall be subject to (i) particular lien for monies due in respect of such goods, and (ii) general lien for any other monies (not relating to such goods) due from the Merchant to the Carrier. If any such monies due to the Carrier are not paid within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier, the goods may be sold by public auction or private treaty or may be disposed of at the sole discretion of the Carrier at the expense of the Merchant, and the proceeds if any (net of the expenses in connection with such sale) shall be applied in satisfaction of such debts, and the Carrier shall not be liable for any reduction in value received on the sale of the goods, nor shall the Merchant be relieved from the liability of any outstanding debts merely because the goods have been sold or disposed of. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to pay the outstanding monies, such shall not affect the Carrier's aforesaid right to sell or dispose of the goods. The Merchant is responsible for payment of all costs and expenses (including storage costs) being incurred when the goods are being liened.
9.1. Charges for the Services shall be deemed fully earned and non-returnable upon receipt of the goods by the Carrier. The Merchant shall pay to the Carrier all sums immediately when due without deduction on account of any claim, counterclaim or set-off. Except under other special arrangement agreed by the Carrier in writing, payment to the Carrier is due as soon as an invoice is rendered to the Merchant. For any amount unpaid within 30 days from the due date, the Carrier shall be entitled to interest from the date of the invoice until payment at 2% per month.
9.2. If the shipment is on the freight collect basis but the consignee does not take delivery of the goods within 14 days from the date of the goods' arrival at the port of discharge or place of delivery, the shipper shall be responsible for payment of all the outstanding freight charges, and costs and expenses (including but not limited to storage costs and demurrage charges) incurred until the goods are duly delivered or are sold or disposed of as per Clauses 8.2 and/or 8.3.
10.1. The Carrier shall be entitled to sub-contract on any terms to any agents and/or sub-contractors the whole or any part of the Services whatsoever undertaken by the Carrier.
10.2. The Carrier reserves to itself absolute discretion as to the means, the manner, the routes and the procedures to be followed in the performance of the Services including the carriage, the transhipment, the storage and the other handling of the goods. The Carrier has liberty to use any means, routes and procedures, including using any vessel whether or not named on the front page of this Bill of Lading and stowing the goods on or under deck. Anything done in accordance with the aforesaid discretion and/or liberty shall not be a deviation of whatsoever nature or degree.
11. If there is any loss, damage, deterioration, delay, non-compliance or miscompliance of instructions, non-delivery, misdelivery (other than the one described in Clause 12), unauthorised delivery or misdirection of or to or in connection with the goods that arises from the negligence or mistake of the Carrier or that arises from the negligence, mistake, wilful default or deliberate wrongdoing of the Carrier's employee, agent or sub-contractor, the Carrier shall be liable for any claim relating to the aforesaid incident. However, the Carrier's aforesaid liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods in respect of which a claim arises.
12. If there is any misdelivery of goods without presentation of this Bill of Lading negligently or deliberately done by the Carrier's employee, agent or sub-contractor that has no prior approval of the Carrier, the Carrier shall be liable for any claim relating to the aforesaid misdelivery of goods. However, the Carrier's aforesaid liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods misdelivered.
13. Notwithstanding any other terms to the contrary in this Bill of Lading but subject to Clauses 2.3 and 2.4, the Carrier shall not be liable for any claim relating to:
   a. any delay, goods shut out or off loaded, goods' departure or arrival time; or
   b. any special, incidental, indirect, consequential or economic loss (including loss of market, loss of profit, loss of tax, loss of tax return, loss of revenue, loss of business or loss of goodwill); or
   c. any loss, damage, expense or cost arising from or in connection with fire, flood, storm, typhoon, explosion, deviation, port congestion, strike, lock out, stoppage or restraint of labour; or
   d. any loss of or damage to the goods which are stated on the front page of this Bill of Lading to be carried on deck and which are so carried
regardless of whether or not the aforesaid incident arises from the negligence or mistake of the Carrier or from the negligence, mistake, wilful default or deliberate wrongdoing of the Carrier's employee, agent or sub-contractor. However, if the Carrier is still legally held liable for the aforesaid provision, the Carrier's liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods in respect of which the claim arises.
14. If there is any claim that the Carrier is legally held liable and there are no other terms in this Bill of Lading suited to that claim for limiting the Carrier's liability, the Carrier's aforesaid liability shall not exceed a sum calculated at the rate of 2 SDR per kilogram of the gross weight of that part of the goods in respect of which the claim arises.
15. The liability accepted by the Carrier under Clauses 11, 12, 13 and 14 shall be subject to a further limit of 200,000 SDR per event i.e. the Carrier's aforesaid liability accepted under Clauses 11, 12, 13 and 14 shall not in any circumstances whatsoever exceed 200,000 SDR per event or events arising from a common cause.
16. The Carrier may accept liability in excess of the limits set out in Clauses 2.3, 2.4, 11, 12, 13, 14 and 15 provided that (i) the value of the goods is declared in writing by the shipper and accepted by the Carrier in writing and (ii) the Merchant pays to the Carrier the additional charges as decided by the Carrier. Details of the additional charges will be provided upon written request by the shipper. The declared value accepted shall be the Carrier's limit of liability and shall replace the limits in Clauses 2.3, 2.4, 11, 12, 13, 14 and 15.
17. Any Services provided by the Carrier gratuitously are provided on the basis that the Carrier will not accept any liability whatsoever and howsoever arising.
18. Any superficial rust, oxidation, discoloration, or any like condition due to moisture is not a condition of damage but is inherent to the nature of the goods, and acknowledgement of receipt of the goods by the Carrier in apparent good order and condition is not a representation that such rust, oxidation, discoloration, or the like condition due to moisture did not exist on receipt.
19. If the Services are or are likely to be affected by any risk, delay, hindrance, difficulty and/or disadvantage of any kind whatsoever, whensoever and howsoever arising (including port congestion, strike, lock out, stoppage, restraint of labour, and the Merchant's failure to pay the Services charges that are outstanding for 2 months or more), the Carrier may terminate and/or abandon the Services and place the goods at any place for the Merchant to take delivery of the goods, whereupon the Carrier's liability and responsibility in respect of the goods shall cease. If the Merchant does not take delivery of the goods within 14 days after notice has been dispatched to the Merchant's address, e-mail address or fax number last known to the Carrier, the Carrier is entitled (but not obliged) to sell the goods by public auction or private treaty or to dispose of the goods at the Carrier's sole discretion at the expense of the Merchant. In case the Merchant does not receive the notice dispatched by the Carrier asking the Merchant to take delivery of the goods, such shall not affect the Carrier's aforesaid right to sell or dispose of the goods. The Merchant is responsible for payment of all the outstanding Services charges, and costs and expenses (including storage costs) incurred until the goods are taken delivery, disposed of or sold.
20. Any claim notice against the Carrier must be in writing and delivered to the Carrier within 14 days from the date of delivery of the goods or the date the goods should have been delivered or the date the Merchant first knows about the event that may give rise to the claim, whichever is the earliest. If the Merchant fails to deliver the aforesaid written claim notice to the Carrier and thereby prejudices the Carrier's position in the claim, the Carrier shall in any event be discharged of all liability whatsoever and howsoever arising in respect of the claim.
21. The Carrier shall in any event be discharged of all liability whatsoever and howsoever arising in respect of the Services, unless suit is brought against the Carrier in the court of the Hong Kong Special Administrative Region within nine months from the date of delivery of the goods or the date the goods should have been delivered or the date of the event giving rise to the claim, whichever is the earliest.
22. The defences, exemptions and limitations of liability provided for in this Bill of Lading shall apply in any action against the Carrier whether such action is founded in contract or in tort. Moreover, the Carrier shall not be liable for any claims of whatsoever nature except those claims for which the Carrier has specified its accepting liability under Clauses 2.3, 2.4, 11, 12, 13, 14, 15 and 16.
23. The contract evidenced by this Bill of Lading is governed by the law of the Hong Kong Special Administrative Region. Any claim or dispute must be determined exclusively by the courts in the Hong Kong Special Administrative Region and no other court.