IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BOOM LANKA BATHIK & GIFTS,　　　　　)
LLC, and SURDARMA　　　　　　　　　　)
WARNAKULASOORIYA,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　vs.　　　　　　　　　　　　　　　)　　　　C.A. No.: 1:24-cv-23151
　　　　　　　　　　　　　　　　　　　　)
SCANWELL LOGISTICS (MIA), INC.;　　　)
SCANWELL LOGISTICS COLOMBO　　　)
(PVT) LTD; and ALPHA BROKERS　　　　)
CORPORATION.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　　)

## DEFENDANT SCANWELL LOGISTICS (MIA), INC.'S APPEAL OF MAGISTRATE JUDGE'S ORDER GRANTING MOTION TO REMAND

Defendant Scanwell Logistics (MIA), Inc. ("Scanwell MIA" or "Defendant"), respectfully

files this Appeal pursuant to at least Local Rule 4(a) of the Magistrate Judge Rules. For the reasons

stated herein, Defendant respectfully objects to the Magistrate Judge's Order granting Plaintiffs'

Motion to Remand, and asks this Court to set aside the Order and deny Plaintiffs' Motion to

Remand to State Court.

## PROCEDURAL HISTORY

On or about July 25, 2024, Plaintiffs Boom Lanka Bathik & Gifts, LLC ("Boom Lanka")

and Surdarma Warnakulasooriya ("Plaintiff Warnakulasooriya") filed a lawsuit in Eleventh

Judicial Circuit in and For Miami-Dade County, Florida "following an ongoing dispute over the

importation of goods from Sri Lanka." *See* Order Remanding Cases to State Court, ECF No. 25

at page 2.  The Plaintiffs' Complaint alleges liability for damages against the Defendants for losses

of goods, lost profits related to goods, and costs associated with the Defendants' alleged failures

to deliver the goods from Sri Lanka to Miami, Florida to Plaintiffs among other causes of action. Compl. ECF No. 1-3, ⁋53  ("As a result of Defendants' actions, Plaintiffs suffered by economic and non-economic damages, including but not limited to: a. [l]oss of the Laksala Goods; b. [l]ost profits related to the Laksala Goods; c. [c]arrying costs related to Boom Lanka's retail store that could not operate due to Defendants' failure to deliver the Laksala Goods; and Warnakulasooriya's loss of enjoyment of life, emotional distress, and mental anguish and trauma.").  Following service of the Complaint and under well-established law cited in Defendant's Notice of Removal, Defendant removed the case from state court to this court on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and § 1337, and which could be removed under 28 U.S.C. § 1441. Specifically, because the Complaint pleads a cause of action against Defendant that arises from damage to or loss of goods shipped in interstate or international commerce, Defendant removed this case to this court based on the application of the Carriage of Goods By Sea Act ("COGSA").  Plaintiffs moved to remand to state court, asserting two main arguments: (1) COGSA is inapplicable and cannot serve as the basis for removal; and (2) there is no other basis for federal jurisdiction. In an Order filed on December 13, 2024, the Honorable Chief United States Magistrate Judge Edwin G. Torres granted Plaintiffs' Motion to Remand (the "Order"). Ultimately, the Magistrate Judge's Order found COGSA inapplicable to this case, and therefore, found no other basis for federal jurisdiction over this case.

The Magistrate Judge's Order was issued in error. COGSA applies to this case and serves as a basis for removal based on controlling legal authority from the U.S. Court of Appeals from the Eleventh Circuit as well as the U.S. District Court for the Southern District of Florida, and as such, the court should deny Plaintiffs' remand motion.

<u>**SCANWELL MIA'S OBJECTIONS**</u>

I.   **The Magistrate Judge's Order Makes Incorrect Factual Conclusions Leading to a Determination that COGSA Does Not Apply.**

The Magistrate Judge's Order makes erroneous legal and factual conclusions leading to the Magistrate Judge's incorrect determination that COGSA does not apply to this case.  As an initial matter, Scanwell MIA objects to the following statements provided in the Background Section of the Magistrate Judge's Order. Scanwell MIA objects to the sentence in the Magistrate Judge's Order that "Pursuant to an October 2021 agreement between Plaintiffs and Scanwell to transport the Laksala Goods to the United States, Plaintiffs delivered the items 'in a 20 ft. sealed and inspected container.'"  *See* Order Remanding Cases to State Court, ECF No. 25 at page 2.  As provided in Scanwell MIA's opposition to Plaintiffs' Motion to Remand, based on caselaw throughout the country the bill of lading constitutes the contract of carriage between the parties. *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 19, 125 S. Ct. 385 (2004) ("A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.").

The alleged agreement by Plaintiffs was in fact a quote for services and not the underlying agreement between the parties. Next, Scanwell MIA objects to the statement "Then, '[a]fter receiving the Laksala Goods, Scanwell – without explanation or Plaintiffs' permission and consent – moved the Laksala Goods into a 40 ft. container that was not inspected or approved by Plaintiffs.'"  *See* Order Remanding Cases to State Court, ECF No. 25 at page 2.  Scanwell MIA states that prior to shipment, Plaintiffs were notified about placing the Laksala Goods into a new container and a new price quote was generated for a 40 foot container, which plaintiff Boom Lanka Bathik & Gifts, LLC ("Boom Lanka") approved.  Additionally, the bill of lading cited by Plaintiffs

and attached to Plaintiffs' Complaint specifically provides for a 40 foot container. *See* Compl. ECF No. 1-3, Exhibit B.

Scanwell MIA objects to the statement "Defendants used the wrong Harmonized System Code[] for the Laksala Goods, which led to U.S. Customs holding them." *See* Order Remanding Cases to State Court, ECF No. 25 at page 2. Scanwell MIA denies that it used the wrong Harmonized System Code for the Laksala Goods leading to U.S. Customs holding them, but instead the reason for U.S. Customs holding the Laksala Goods was solely due to the negligence of Boom Lanka, and a breach of the warranties and representations given by Boom Lanka that "all the goods have been properly and sufficiently packed, labelled and/or marked" and "the Merchant shall fully comply with the applicable laws and/or regulations of ports, Customs, and other authorities." *See* Exhibit A to Defendant's Opposition to Mot. to Remand, ECF No. 15-1 (Bill of Lading, Paragraphs 4(a) and 4(c).) Taken together, the facts chosen by the Magistrate Judge provide a background which attempts to diminish the overwhelming maritime  makeup of this shipment at issue in this case. As more thoroughly described below and in Defendant's Response in Opposition to the Motion to Remand, the facts and characteristics of this shipment were substantially maritime in nature, and Plaintiffs are in fact seeking damages as a result of lost goods during this transportation.

**II.     The Magistrate Judge's Order Incorrectly Concludes that Scanwell MIA is a Freight Forwarder.**

Scanwell MIA objects to portions of the Analysis Section of the Order. First, Scanwell MIA agrees that the Carriage of Goods by Sea Act ("COGSA") governs from the time the goods are loaded on the ship to the time they are discharged from the ship absent an extension of COGSA by agreement between the parties. After establishing precedent under COGSA and the need for

an agreement to extend COGSA past the port of discharge, the Magistrate Judge addresses the agreement between the parties that Scanwell MIA is not a carrier.  *See* Order Remanding Cases to State Court, ECF No. 25 at page 7.  Scanwell MIA agrees it is not a carrier. However, the Magistrate Judge goes further quoting allegations made by Plaintiffs that because Scanwell MIA is not a carrier, it must be a freight forwarder. *See* Order Remanding Cases to State Court, ECF No. 25 at page 7.  As stated by Scanwell MIA in its briefs, Scanwell MIA was not acting as a freight forwarder but as a delivery agent.  Such designation as a delivery agent is on the face of the bill of lading cited by Plaintiffs in the Complaint. *See* Compl., Exhibit B.  The Magistrate Judge then provides analysis stating that COGSA ordinarily does not apply to claims of liability against a freight forwarder, and states that Scanwell MIA tries to make exception to this established principle. However, as stated Scanwell MIA was not the freight forwarder but a delivery agent as provided on the face of the bill of lading. Case law from across the country is clear that COGSA can be extended to agents of carriers and for actions after discharge from the vessel via contract in the form of a bill of lading.  For example, as this court has held:

> The limitation of liability provisions of COGSA apply only to carriers and ships. 46 U.S.C. § 1304(5). The term "carrier" is defined as the owner or charterer who enters into a contract of carriage with the shipper. 46 U.S.C. § 1301. Thus, the liability provisions apply to the M/V Archigetis, Fedpac Lines and Malvern Maritime. These provisions do not afford limitation of liability benefits to agents of the carrier, such as Continental Stevedore Terminals, however, unless the parties contractually extend limited liability to non-carriers and agents of the carrier. *Generali v. D'Amico*, 766 F.2d 485 (11th Cir. 1985). In clause 19, the instant bills of lading extend the limitation of liability provisions to servants and agents of the carrier, including independent contractors.

*Z.K. Marine, Inc. v. M/V Archigetis*, 776 F. Supp. 1549, 1555 (S.D. Fl. 1991).  The *Z.K. Marine* case extended COGSA, and the limitations of liability afforded by COGSA, to the stevedores and terminal operators—non-carriers and non-ships. *See Z.K. Marine, Inc. v. M/V Archigetis*, 776 F.

5

Supp. 1549, 1555 ("Thus, the liability limitation provisions of the bills of lading extend protection to all defendants in the instant case."). By the clear terms of the bill of lading COGSA extends to Scanwell MIA because it is an agent of Scanwell Container Line Ltd.[1] Additionally, the bill of lading did in fact extend COGSA coverage to all agents.

### III. The Allegations in Plaintiffs' Complaint on their Face, Combined with the Bill of Lading, Confer Federal Jurisdiction under COGSA based on Supreme Court Precedent.

Next, the Magistrate Judge turns to the bill of lading at issue in this case, which is in fact the one and only agreement between the parties, and the bill of lading extends COGSA past the port of discharge. Plaintiffs frivolously argue that the underlying agreement between the parties to is the email attached as Exhibit A to the Complaint, which is obviously merely an initial price quote. *See* Compl., Exhibit A. Plaintiffs' Complaint explicitly states: "On October 21, 2021, Scanwell and Boom Lanka entered into an agreement to ship the Laksala Goods (defined below) to Miami, Florida (door-to-door delivery) in a 20-foot GP container (the 'Agreement') for a total cost of $12,750.00 (the 'Shipping Fee'). A copy of the Agreement is attached as Exhibit A." *See* Compl. ¶ 20. This allegation in the Complaint combined with the International Bill of Lading are

---

[1] Plaintiffs claim that Scanwell MIA's case law cited in the Notice of Removal proves that the case should be remanded because those cases—according to Plaintiffs—concern claims against ocean carriers made pursuant to a bill of lading. *See* Mot. to Remand ECF No. 11, at page 4-5. But Plaintiffs fail to note those cases extend COGSA to agents of carriers. For example, in *Eurosistemas, S.A. v. Antillean Marine Shipping, Inc.*, 2011 WL 3878357, at *2 (S.D. Fla. Sept. 1, 2011), the court noted: "Although COGSA expressly applies duties to carriers during the sea transport, the parties may agree to extend the applicability of the Act to the pre-loading and post-discharge period." *See id.* at *7. In this instance, Defendant has shown that the bill of lading applicable to this action and shipment extends COGSA to Plaintiffs' allegations against Scanwell MIA. Accordingly, *Eurosistemas* supports removal under COGSA for claims made by Plaintiffs against Scanwell MIA.

enough to confer COGSA application.  *See* Compl. ℙ 26 ("On or about December 5, 2021, Defendants dispatched the Laksala Goods by sea freight. A copy of the International Bill of Lading is attached as Exhibit B").

As multiple courts have recognized, COGSA applies in the context of a multimodal import "through shipment" even where the damage occurs during an inland segment of the transport. In response to numerous lower court decisions attempting to separate inland segments of multimodal transportation from ocean segments, the United States Supreme Court has explained:

> [T]o the extent that these lower court decisions fashion a rule for identifying maritime contracts that depends solely on geography, they are inconsistent with the conceptual approach our precedent requires. [ ] Conceptually, so long as a bill of lading requires substantial carriage of goods by sea, its purpose is to effectuate maritime commerce—and thus it is a maritime contract. Its character as a maritime contract is not defeated simply because it also provides for some land carriage. Geography, then, is useful in a conceptual inquiry only in a limited sense: If a bill's *sea* components are insubstantial, then the bill is not a maritime contract.

*Norfolk Southern Ry. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 27 (2004); *see also Kawasaki Kisen Kaisha, Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89 (2010) (quoting *Kirby*, 543 U.S. at 29) ("Applying Carmack's provisions to international **import** shipping transport would also undermine the 'purpose of COGSA, to facilitate efficient contracting for carriage by sea.") (emphasis added); *CNA Ins. Co. v. Hyundai Merch. Marine Co., Ltd.*, 747 F.3d 339 (6th Cir. 2014); *Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc.*, 612 F.2d 138, 145–146 (2nd Cir. 2010) (quoting *Kawasaki-Kisen*) ("[N]one of Carmack's legislative versions have applied to the inland domestic rail segment of an import shipment from overseas under a through bill" and "applying two different bill of lading regimes to the same through shipment would undermine COGSA and international, container-based multimodal transport") *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 414 (6th Cir. 2008) (citing *Kirby* as requiring courts to evaluate multimodal

7

contracts in their entirety rather than treat each of the multiple stages in a multimodal transportation

as subject to separate liability regimes, which would present an obstacle to efficient liability rules).

Whether or not a maritime contract is involved becomes important in determining whether

admiralty law extends to inland portions of a shipment. As the Supreme Court has further

explained, *Kirby* holds so long as a substantial part of carriage for a through shipment is for

carriage by sea, its purpose is to effectuate maritime commerce and COGSA applies. *Kawasaki*

*Kisen Kaisha Ltd. v. Regal-Beloit Corp.* 561 U.S. 89, 99–100 (2010).  Courts have explained such

a result is mandated in order to effectuate Congress's intent in creating a uniform system of liability

for international shipments to and from the United States. *See Kirby*, 543 U.S. at 28–29; *Kawasaki*

*Kisen*, 561 U.S. at 108 ("Applying two different bill of lading regimes to the same through

shipment would undermine COGSA and international container-based multimodal transport.");

*Orient Overseas Line*, 525 F.3d at 419; *Ziegler*, 2017 U.S. Dist. LEXIS 95210 at \*12.  Having

only COGSA apply for "through shipments" ensures all parties to the shipment understand the

nature and extent of potential liability, which serves to facilitate the overall efficiency of

international shipping.

  *Kirby* and its progeny thus clearly establish COGSA applies when an import "through

shipment" involves both international ocean transportation and domestic overland transportation.

Thus, post *Kirby*, it is no longer necessary that a "through bill of lading" issue for COGSA to

apply. Rather, the focus is instead upon whether the shipment is considered a "through shipment."

Based upon the foregoing authorities, courts must consider: (1) the total amount of transportation

on land versus by sea (i.e. the "most substantial" part of the transport); (2) whether one party has

arranged the "door to door" transport (i.e. overland and ocean legs of transport); (3) whether one

party invoices the shipper for the entirety of the trip; (4) whether one party pays each of the various transportation companies; (5) whether the shipper contracted with one party for all details of the shipment with the expectation that party would handle all aspects of the transportation; and (6) existence of a Himalaya Clause. Under this rubric, therefore, it becomes apparent the "door to door" transportation of the Cargo from Sri Lanka to Miami, Florida was a "through shipment." It follows therefrom that COGSA applies.

Reviewing the allegations in Plaintiff's Complaint, the most substantial part of the transportation was the ocean carriage as the Cargo traveled from Sri Lanka with the ultimate destination to be Miami, Florida.  *See* Complaint, ECF No. 1-3, Exhibit B.  Plaintiff claims that Scanwell and Plaintiff  "entered into an agreement to ship the [Cargo] to Miami, Florida (door-to-door delivery in a 20-foot GP container . . . ."  Compl. ¶ 20.  Further, as alleged by Plaintiffs, Scanwell arranged for all stages of transportation.  Compl. ¶ 29 ("Sometime in late 2021 or early 2022, Scanwell hired Alpha Brokers to assist with the shipment of the [Cargo].");  Compl. Exhibit A (providing various requirements for approvals and delivery from Colombo to Miami, Florida). As alleged by Plaintiffs in the Complaint, Scanwell would invoice and in fact invoiced Plaintiff for the entirety of the trip. (Compl. Exhibit A) ("Total cost is USD 12750 per container.")  As alleged by Plaintiffs in the Complaint, Scanwell was to pay each of the various transportation companies and Plaintiff contracted with Scanwell to handle all aspects of the transportation. (Compl. Exhibit A) ("Above rate is inclusive of . . . Freight Charges . . . Packing charges . . . Transport charges . . . Loading charges . . . Approvals . . . Customs clearance . . . Port Charges . . . Handling Charges . . . Documentation charges . . . Agency fee.").  Finally, the International Bill of Lading provides a Himalaya Clause in the portion disputed between the parties as the "liability

and responsibility" page. *See* Exhibit A to Opp. To Motion to Remand, ECF No. 15 ("Every such

employee, agent and sub-contractor shall have the benefit of all the terms herein benefiting the

Carrier as if such terms were expressly provided for his or its benefit. For these purposes, the

Carrier contracts for itself and also as agent and trustee for each such employee, agent and sub-

contractor.").

Courts in this jurisdiction look to determine whether the parties agreed to extend COGSA

to the agents of the carrier via contract. *See Z.K. Marine, Inc. v. M/V Archigetis*, 776 F. Supp.

1549, 1555 ("Thus, the liability limitation provisions of the bills of lading extend protection to all

defendants in the instant case."); *Generali v. D'Amico*, 766 F.2d 485, 487 (11th Cir. 1985) (S.D.

Fl. 1991) ("Although COGSA does not operate to afford limitation of liability benefits to agents

of the carrier, it is, however, well settled that parties to a bill of lading may contractually extend

limitation of liability benefits to non-carriers and agents of the carrier."); *Robert C. Herd & Co.,*

*Inc. v. Krawill Machinery Corp.,* 359 U.S. 297 (1959); *Secrest Machine Corporation v. S.S. Tiber*,

450 F.2d 285, 286 (5th Cir. 1971); *Rupp v. International Terminal Operating Co., Inc.*, 479 F.2d

674 (2d Cir. 1973). This is precisely what happened in this case—Plaintiffs agreed to extend

COGSA's application to Scanwell MIA via the Himalaya clause in the bill of lading.

Scanwell MIA also objects to the Magistrate Judge's interpretation of *Blinc, Inc. v. AZ*

*Miami Corp.*, No. 14-23998, 2015 WL 398891 (S.D. Fla. June 30, 2015).  The Magistrate Judge

cites the case of *Blinc, Inc. v. AZ Miami Corp.* for the following proposition:

> But in *Blinc, Inc.,* even where the terms of a bill of lading did "clearly extend
> COGSA to the pre-loading and post-discharge periods," where there was
> "uncertainty as to whether COGSA was extended to encompass" a final part of a
> shipment not contemplated on the bill of lading, a Court in this District concluded
> that the defendant could not "demonstrate[] that COGSA preempt[ed the plaintiffs']
> causes of action, and that this Court [had] federal question jurisdiction."

*See* Order Remanding Cases to State Court, ECF No. 25 at page 7.  (citing *Blinc, Inc. v. AZ Miami Corp.*, No. 14-23998, 2015 WL 398891 (S.D. Fla. June 30, 2015)). However, the decision of the *Blinc* Court not to apply COGSA was based on the fact that the bill of lading provided the place of delivery as Miami CFS and the allegation in the complaint in that case was that the final destination was to be Boca Raton, Florida. I.e., it was based on the failure of element (2) listed above—whether one party has arranged the "door to door" transport (i.e. overland and ocean legs of transport)—because the loss of the goods to thieves happened subsequent to the place of delivery on the face of the bill of lading.  *See Blinc.*, 2015 WL 398891, 2015 U.S. Dist. LEXIS 84776 at *7-8.  In the current case, the loss of the Laksala Goods happened prior to the place of delivery, as the place of delivery was Miami, Florida, and the allegations of the Complaint confirm that delivery was to be made in Miami, Florida to Boom Lanka as the consignee "door-to-door." *See* Compl. ₱ 20 ("On October 21, 2021, alleging that Scanwell and Boom Lanka entered into an agreement to ship the Laksala Goods (defined below) to Miami, Florida (door-to-door delivery) in a 20-foot GP container (the "Agreement") for a total cost of $12,750.00 (the "Shipping Fee"). A copy of the Agreement is attached as Exhibit A.").  Therefore, the interpretation of the highly distinguishable *Blinc* decision was in error.

IV.     **The Magistrate Judge's Order Incorrectly Concludes That the International Bill of Lading for this Shipment Disclaims COGSA Past the Port of Discharge.**

Finally, the Magistrate Judge provides an analysis assuming *arguendo* that the bill of lading at issue contained the liability and responsibility page that is disputed between the parties and found that the terms of the bill of lading do not extend COGSA to the pre-loading and post-discharge period.  The Magistrate Judge outlines Section 2.5 of the bill of lading providing:

"Regarding the responsibility and liability of the Carrier [, Scanwell Container Line Ltd.,] for loss of or damage to, or in connection with, the custody and care and handling of the goods prior to the loading on the vessel and subsequent to the discharge from the vessel, such shall be determined by the terms of this Bill of Lading but not by the Hague Rules nor the Hague-Visby Rules."  However, the disclaiming of the Hague Rules and Hague Visby Rules does not, by itself, disclaim the application of COGSA. Although the United States Congress took the Hague Rules nearly verbatim and incorporated them into the federal statute known as the Carriage of Goods by Sea Act,  there are key differences between the Hague Rules and COGSA.

Importantly, the Hague Rules uses a £100.00/package limitation of liability, where COGSA establishes a $500/package limitation of liability.  Next, the defense that a carrier exercising due diligence to make the vessel in all respects seaworthy may not be liable for loss or damage arising from an error in the navigation or management of the vessel is found in COGSA but absent in the Hague Rules.  *Compare* 46 U.S.C. § 30706(a) *with* International Convention for the Unification of Certain Rules of Law relating to Bills of Lading ("Hague Rules"), and Protocol of Signature (Brussels, 25 August 1924).  Next, the Hague-Visby Rules amended the Hague Rules, and the United States has explicitly not incorporated those amendments into legislation.  *See Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409 (6th Cir. 2008) (analyzing the difference between COGSA and Hague-Visby and determining that the bill of lading applied Hague-Visby Rules and not COGSA).  Thus, while Courts will sometimes analyze the Hague Rules and COGSA under a similar analysis due to those laws having almost identical terms, a disclaimer of the application of the Hague Rules does not disclaim the application of COGSA. The Magistrate Judge in the Order correctly states that the definitions for the bill of lading in Section

12

2.1 include COGSA.  Notably, the only two other bodies of law that are defined in Section 2.1 are "Hague Rules" and "Hague-Visby Rules." The quotation under section 2.5 disclaims the application of the Hague Rules and the Hague-Visby Rules to loss or damage to goods prior to loading and subsequent to discharge, but states that the terms of the Bill of Lading still apply to such operations.  With the Hague Rules and the Hague-Visby Rules disclaimed, the only remaining body of law defined under the bill of lading is COGSA.  Therefore, the Magistrate Judge's order finding the bill of lading to not extend COGSA due to the inapplicability of the Hague Rules and Hague-Visby Rules was in error.

Because the case has been properly removed, there is no legal basis to remand to state court. Pursuant to 28 USC 1447(c), a district court may remand a case to state court where district court lacks subject matter jurisdiction. Here, as noted, this court has jurisdiction over Plaintiff's case pursuant to 28 USC 1331 and 1337. When the court has jurisdiction to hear a case and that jurisdiction has been properly invoked—as it was here by Defendant—there is no basis to remand.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Magistrate Judge's Order for Remand be set aside, and that Plaintiffs' Motion for Remand be denied in its entirety.

This the 20th day of December, 2024.

Respectfully submitted,

*/s/ Todd C. Rubenstein*
Todd C. Rubenstein, Esq.
Florida Bar No. 1016639
TAYLOR NELSON PL
20 3rd Street SW, Suite 209
Winter Haven, FL 33880
(863) 875-6950 (tel)
trubenstein@taylorlawpl.com
efiling@taylorlawpl.com
krieck@taylorlawpl.com


C. Fredric Marcinak, Esq.
Admitted Pro Hac Vice
MOSELEY MARCINAK LAW GROUP LLP
P.O. Box 26148
Greenville, S.C. 29616
(864) 248-6027 (tel)
fred.marcinak@momarlaw.com
Hannah.bridges@momarlaw.com

*Counsel for Defendant*
*Scanwell Logistics (MIA), Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing upon all parties to this matter by e-filing the same with the Court's CM-ECF system, which shall notify all parties of record.

This the 20th day of December 2024.

*/s/ Todd C. Rubenstein*
Todd C. Rubenstein, Esq.
